Karen J. OWINGS *v.* ECONOMIC AND MEDICAL
SERVICES, A Division of Arkansas Department
of Human Service

90-42                                              790 S.W.2d 438

Supreme Court of Arkansas
Opinion delivered June 18, 1990

*Karen J. Owings*, pro se.

*Richard B. Dahlgren*, Dep't of Human Services, Office of Chief Counsel, for appellee.

STEELE HAYS, Justice. The sole issue on appeal is whether the appellant received adequate notice and opportunity for a hearing prior to the termination of her medical assistance and AFDC (Aid to Families with Dependent Children) benefits. The trial court held that the notice and hearing procedures provided by the appellee fully complied with constitutional requirements of due process. We affirm.

The facts are that the appellant and her child had been receiving AFDC and medical assistance benefits since March of 1984. On September 13, 1988, the appellant met with an Economic and Medical Services (EMS) caseworker for a routine re-evaluation of her eligibility. At this meeting, the appellant was informed that she must provide EMS with certain information to continue her eligibility. The written request for this information was contained in a form entitled, "Notice of Action." The form, referred to by the appellee as EMS-1, read in pertinent part:

> X Your case will be/has been closed. The last month you will receive Medicaid is _____.
>
> REASON FOR ACTION:
>
> Need verification of your checking account. Mr. Swindoll must complete the absent parent form to verify if Diane is

deprived of her father's support — Need 2 collateral forms.

Our policy supporting this action is _____.

The above action will be/has been taken on 9/23/88. If you appeal this action by 9/23/88 your assistance may continue at or be reinstated to its previous level until a hearing decision is issued.

Pursuant to this request, the appellant mailed the information to the appellee. However, she failed to include a verification of her checking account balance. Because of this oversight, the EMS caseworker sent another EMS-1 form to the appellant informing her, "I received all the verification requested except verification of how much is in your checking account." The form contained the following language:

The above action [closure of case] will be/has been taken on 10/9/88. If you appeal this action by 10/9/88 your assistance may continue at or be reinstated to its previous level until a hearing decision is issued.

The appellant admittedly did not respond to the request by October 9. She claims to have mailed the information to the appellant on October 10, following her usual practice of responding within a week to ten days of receiving such a request. In any event, the information did not reach the appellee until October 19. By that time, the appellant's case had been closed.

The appellant, upon being notified that her case had been closed, filed a request for a hearing, asserting that termination of her benefits without a pre-termination hearing violated the due process clause of the Constitution. She also asked that her benefits be continued pending the hearing. Despite this request, her case remained closed.

At the administrative hearing, which took place on February 2, 1989, the action of EMS in closing the appellant's case was upheld. The trial court affirmed finding that Form EMS-1 affords recipients the opportunity to continue their benefits pending a hearing. The trial court's ruling was correct.

The appellee maintains that the language in its Form EMS-

1 provides a recipient with timely and adequate notice and opportunity for a hearing before benefits are terminated. The form was drafted pursuant to the appellee's own Financial Assistance Policy 2620, which was formulated pursuant to 45 C.F.R. § 205.10 (1988). Policy 2620 provides that, if a recipient's benefits are to be terminated, the recipient must receive advance notice, mailed at least ten days before the termination becomes effective. The appellant acknowledges that there is nothing inherently defective in the policy itself; her contention is that the appellee's attempt to implement the policy by use of the EMS-1 form fails to meet the requirements of due process.

We recognize, of course, that a welfare recipient must be provided with notice and an opportunity to be heard prior to termination of benefits. *Goldberg* v. *Kelly*, 397 U.S. 254 (1970). Due process requires at a minimum that a person be given notice and a reasonable opportunity for a hearing before he is deprived of property by state action. *Commissioner of Labor* v. *Purnell*, 267 Ark. 593, 593 S.W.2d 157 (1980). However, the language used in the appellee's EMS-1 form gave the appellant both notice that her benefits would be terminated within ten days and the opportunity, if she responded in a timely fashion, to have her benefits continued pending a hearing. The lack of due process allegedly suffered by the appellant is not the result of a defect in the appellee's notice and hearing procedures; it is the result of the appellant's dilatory response. A pre-termination hearing was, so to speak, there for the asking.

It is also argued that the appellee's termination procedures are arbitrary in that the decision to terminate benefits is often left solely to the discretion of the individual caseworker. The contention is not supported by convincing argument or authority, and therefore, we will not address it. *McGuire* v. *Bell*, 297 Ark. 282, 761 S.W.2d 904 (1988).

Affirmed.

DUDLEY, GLAZE, and PRICE, JJ., dissent.

DALE PRICE, Justice, dissenting. It is beyond dispute that a welfare recipient is constitutionally entitled to notice and a hearing prior to termination of benefits. This is the unequivocal holding of *Goldberg* v. *Kelly*, 397 U.S. 254 (1970), which the

majority recognizes. I dissent because the majority fails to recognize that the EMS-1 form, which seemingly affords the appellant a pre-termination hearing, in reality, does not. The opportunity for the appellant to exercise her due process rights is merely illusory.

The flaw in the form is that it tells the recipient, "comply with this request for information by a certain date or your benefits will be terminated." The form also tells the recipient that, *by that same date*, she must ask for a pretermination hearing. A recipient in the appellant's position, believing she has complied with the request, has no reason to know her benefits will be terminated, and therefore, has no reason to request a hearing. The majority would have the appellant and others in her position take an absurd step to protect their constitutional rights: any time they respond to a request for information, they must accompany that response with a request for a hearing, just in case the response is defective or for some reason, such as misdelivery of mail, fails to reach the department in time.

The EMS-1 form clearly does not implement the due process envisioned in *Goldberg* v. *Kelly, supra*. That case recognized that the purpose of a pre-termination hearing is to determine the validity of the grounds for termination *before* benefits are withdrawn. This appellant simply did not have that opportunity. She was told that her case would be closed unless she met certain conditions. She had good reason to believe she met those conditions. (Even though her response was outside the deadline on the form, the appellee admits that its caseworkers do not rigidly observe the deadlines and often allow an extra few days for response time.) By the time the appellant knew her case would be closed, it was too late to request a hearing.

One of the central requirements of the constitutional right to due process is that a hearing must be afforded at a meaningful time and in a meaningful manner. *Armstrong* v. *Manzo*, 380 U.S. 545 (1965). The appellant was constitutionally entitled to be heard before her change in status occurred. The EMS-1 form, in its present format, does not provide a meaningful opportunity for a pre-termination hearing.

I would reverse and remand.

DUDLEY and GLAZE, JJ., join in the dissent.