TSANN KUEN ENTERPRISES COMPANY *v.*
Christopher Chad CAMPBELL, Amy J. Campbell, and
Office of Commissioner of State Lands

03-391 129 S.W.3d 822

Supreme Court of Arkansas
Opinion delivered November 20, 2003

*Matthews, Campbell, Rhoads, McClure, Thompson & Fryauf, P.A.*, by: *Craig A. Campbell*, for appellant.

*The Watkins Law Office, P.L.L.C.*, by: *Jay A. Edwards*; and *Carol L. Lincoln*, for appellee.

JIM HANNAH, Justice. This is an appeal from an order finding that the notice of tax sale provided to the appellant fulfills constitutional due process requirements and denying the appellant's request that the procedures be held unconstitutional. We hold that Ark. Code Ann. § 26-37-301 (Repl. 1997), fulfills constitutional due process requirements and provides sufficient notice to nonresident landowners prior to their property being sold. Accordingly, we affirm the trial court. Our jurisdiction is pursuant to Ark. S. Ct. R. 1-2(b)(3).

*Facts*

On November 8, 1994, Appellant Tsann Kuen Enterprises Co., Ltd., ("Tsann Kuen") purchased real property known as Lot 5 in the Crimson King Subdivision, Bentonville, Arkansas, for $131,000. The deed was properly recorded in Benton County. The deed listed Tsann Kuen's tax statement address as 33 W. Benton Avenue, Naperville, Illinois 60540-4501.

In 1995, Tsann Kuen moved its corporate office to 2670 E. Walnut Street, Pasadena, California 91107. Tsann Kuen did not provide its new address to the Benton County Tax Collector.

The taxes on this property went unpaid for the years 1996, 1997, 1998, and 1999. In September 1999, the tax collector certified to the Commissioner of State Lands ("Commissioner") that the taxes had become delinquent on the property in question. Subsequently, the Commissioner sent a Notice of Delinquent Real Estate Taxes by certified mail, return requested, to Tsann Kuen at the Naperville, Illinois, tax statement address listed on the deed. The notice was returned and marked "unclaimed" and "forwarding order expired."

In September 2001, the Commissioner performed pre-sale research and generated a title report on the property. Again, the only address listed for Tsann Kuen was the Naperville, Illinois, address that Tsann Kuen had provided to the tax collector.

Accordingly, the Commissioner sent a notice by certified mail, return requested, to Tsann Kuen at that address. The notice stated that "unless all taxes, penalties, interest and costs are paid to this office, a deed conveying title to a new owner will be issued on July 28, 2002." This notice was returned and marked "forwarding order expired." In addition to mailing notice to the last known address of Tsann Kuen, county and state officials published notice in the *Benton County Daily Record* and the *Arkansas Democrat-Gazette*.

On August 20, 2002, appellees Christopher Chad Campbell and Amy J. Campbell acquired title to the property by limited warranty deed. The appellees filed their deed on August 28, 2002.

On September 12, 2002, the appellees filed a complaint in unlawful detainer, asking the trial court to remove Tsann Kuen from the property. In addition, the appellees posted a "Notice of Unlawful Detainer" on the property. Tsann Kuen answered the complaint, requesting that the trial court deny the appellees' complaint and find that the procedures used by the State of Arkansas to notify Tsann Kuen of its tax delinquency and forfeiture of its property, as codified at Ark. Code Ann. § 26-37-101 *et seq.* (Repl. 1997), were unconstitutional. The parties filed briefs with the trial court, and the Commissioner filed a supplemental brief as an intervenor.[1] On December 19, 2002, the trial court entered its order in favor of the appellees. In addition, the trial court found that "the Notice provided to [Tsann Kuen] fulfills constitutional due process requirements" and denied Tsann Kuen's request that the procedures be held unconstitutional. Subsequently, on December 26, 2002, the trial court entered an order for immediate possession in favor of the appellees.

### Standard of Review

In considering the constitutionality of an act, we recognize that every act carries a strong presumption of constitutionality. *Barclay v. First Paris Holding Co.*, 344 Ark. 711, 42 S.W.3d 496 (2001). The burden of proof is on the party challenging the legislation to prove its unconstitutionality, and all doubts will be resolved in favor of the statute's constitutionality, if it is possible to

---

[1] The Campbells and the Commissioner filed a joint brief on appeal.

do so. An act will be struck down only when there is a clear incompatibility between the act and the constitution. *Id.*

### *Constitutionality of Ark. Code Ann. § 26-37-301*

Section 26-37-301 provides:

> (a)(1) Subsequent to receiving tax-delinquent land, the Commissioner of State Lands shall notify the owner, at the owner's last known address, by certified mail, of the owner's right to redeem by paying all taxes, penalties, interest, and costs, including the cost of the notice.

Ark. Code Ann. § 26-37-301 (Repl. 1997).

 In cases involving redemption of tax-delinquent lands, this court has stated that strict compliance with the requirement of notice of the tax sales themselves is required before an owner can be deprived of his or her property. *Jones v. Double "D" Props., Inc.*, 352 Ark. 39, 98 S.W.3d 405 (2003); *Pyle v. Robertson*, 313 Ark. 692, 858 S.W.2d 662 (1993). Tsann Kuen concedes that the Commissioner strictly complied with the statute; however, it argues that § 26-37-101 *et seq.*[2] does not satisfy due process requirements of the United States Constitution and the Arkansas Constitution[3] in that it fails to provide sufficient notice to non-resident landowners prior to the property being sold at a tax forfeiture sale.

 The Fourteenth Amendment of the United States Constitution provides, in part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law. . . ." U.S. Const. amend. 14, § 1. In discussing due process requirements, the United States Supreme Court has stated that

---

[2] Tsann Kuen argues that "Ark. Code Ann. § 26-37-101 *et seq.*, particularly § 26-37-301" is unconstitutional. However, Tsann Kuen develops arguments only with regard to § 26-37-301, and does not develop arguments with regard to the statutes following § 26-37-301. Accordingly, we will only address whether § 26-37-301 is unconstitutional.

[3] Aside from citing article 2, section 21, of the Arkansas Constitution, Tsann Kuen offers no citation to authority or support for its argument that § 26-37-301 violates the due process guarantee of the Arkansas Constitution. This court does not consider arguments that are unsupported by convincing argument or sufficient citation to legal authority. *City of Benton v. Arkansas Soil and Water Conservation Comm'n*, 345 Ark. 249, 45 S.W.3d 805 (2001).

"[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Tsann Kuen argues that the notice requirements contained in § 26-37-301 are not reasonably calculated to notify nonresident landowners of actions against their property and to afford them the opportunity to object. Tsann Kuen states:

> The statutory notice of § 26-37-301 is not reasonably calculated to reach the taxpayer in situations where both the county and state officials are aware that an absentee landowner's address is no longer valid. In a situation such as this, the officials should be required to post a notice on the property itself within a reasonable time period before the property is sold by the State Land Commissioner and send the notice to the physical address of the property. At a minimum, one of the two aforementioned alternatives would be much more reasonably calculated to reach an absentee landowner. Absent such a requirement, or requirements, by the statute, the notice requirement as set out in *Mullane* cannot be satisfied.

In *Mullane, supra,* the United States Supreme Court held that notice by publication was constitutionally sufficient for those "beneficiaries whose interests or addresses are unknown to the trustee." *Mullane,* 339 U.S. at 318. However, the Court stated: "Where the names and post office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency." *Id.* Ultimately, the Court concluded that where the names and addresses of the beneficiaries were known, notice by publication alone was not reasonably calculated to provide notice of the pending proceeding; therefore, the published notice did not satisfy due process requirements. *Id.* at 314-19.

Later, in *Mennonite Board of Missions v. Adams,* 462 U.S. 791 (1983), the Court held that notice by publication and posting did not provide a mortgagee of real property with adequate notice of a proceeding to sell the mortgaged property for nonpayment of taxes. The Court stated:

> When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service. But unless the mortgagee is not reasonably identifiable, constructive notice alone does not satisfy the mandate of *Mullane*.

*Mennonite*, 462 U.S. at 798.

The appellees argue that the *Mennonite* Court approved the "exact type of notification" used by the State in the present case. In the case at bar, not only did the State publish notice in the newspaper, it also mailed notice, by certified mail, to Tsann Kuen's last known address. Tsann Kuen argues that the type of notice that is required in § 26-37-301 may be sufficient for a taxpayer whose last known address is local; however, it contends that this notice does not satisfy the due process requirements for an absentee landowner.

We discussed due process requirements in *State of Washington v. Thompson*, 339 Ark. 417, 6 S.W.3d 82 (1999), stating:

> Due process requires at a minimum that a person be given notice and a reasonable opportunity for a hearing before he is deprived of property by state action. *Owings v. Economic & Med. Servs.*, 302 Ark. 475, 790 S.W.2d 438 (1990). In that regard, the concept of due process requires neither an inflexible procedure universally applicable to every situation nor a technical concept with a fixed content unrelated to time, place, and circumstance. *See South Central Dist., Pentecostal Church v. Bruce-Rogers*, 269 Ark. 130, 599 S.W.2d 702 (1980). Instead, what process must be afforded is determined by context, dependent upon the nature of the matter or interest involved. *Id.*
>
> The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319 (1976). The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be "condemned to suffer great loss." *See Goldberg v. Kelly*, 397 U.S. 254 (1970). It depends upon whether the interest in avoiding that loss outweighs the governmental interest in summary adjudication. *Id.* Thus, determining what process is due involves the consideration of three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Mathews v. Eldridge, supra,* at pp. 334–335; *McCrory v. Johnson,* 296 Ark. 231, 755 S.W.2d 566 (1988).

*Thompson,* 339 Ark. at 425-26.

■ With regard to the first factor, Tsann Kuen, as the owner, certainly has a private interest in the property that was subject to the tax sale. Under the second *Mathews* factor, the risk of an erroneous deprivation of property subject to a tax sale is diminished by the notice requirement in § 26-37-301, as well as by Ark. Code Ann. § 26-35-705 (Repl. 1997), which provides that in the event of a taxpayer's address change, it is the taxpayer's obligation to furnish his or her correct address. Tsann Kuen argues that, in the present case, the probable value of additional or substitute procedural safeguards can be demonstrated because if the tax collector had posted notice on the property or mailed notice to the physical address of the property, then the caretaker living on the property would have promptly notified Tsann Kuen and, accordingly, Tsann Kuen would have paid the taxes and "the sale to Appellees would have never taken place."

Even assuming that Tsann Kuen would have paid its taxes and avoided the tax sale if notice had been posted on the property or if notice had been mailed to the physical address of the property, we must still consider the State's interest, and whether additional procedural safeguards would be unduly burdensome to the State. The appellees argue that Tsann Kuen's argument is unreasonable and state:

> Each year the Commissioner of State Lands has approximately 18,000 parcels of delinquent real estate certified to its office. The arguments advanced by the Appellant would result in an almost insurmountable burden on the State, *i.e.,* physically locate and post thousands of tracts of land each year. The inability to comply with

such a requirement would have a devastating effect on tax sales and undermine the collection of delinquent real estate taxes.

Appellant's argument also assumes that certain information is readily available to the Commissioner of State Lands. Specifically, Appellant assumes that the Commissioner of State Lands has the physical address of parcels that are certified. It does not. Rather, the Commissioner is provided a legal description which is only convertible to an address by researching the records at the county level. . . .

We agree with the appellees' contention. This court, as well as the court of appeals, has previously construed § 26-37-301. In *Jones, supra,* we held that the Commissioner strictly complied with § 26-37-301 when it sent notice by certified mail to the last known address of the homeowner prior to the tax sale. In *Wilson v. Daniels,* 64 Ark. App. 181, 980 S.W.2d 274 (1998), the court of appeals held that the Commissioner, subsequent to receiving the tax-delinquent land, complied with § 26-37-301 when it sent certified notice to the appellant's last known address.

Tsann Kuen argues that the present case is distinguishable from both *Jones, supra,* and *Wilson, supra,* because in those cases, the certified letters were returned and marked "unclaimed," whereas in the present case, the two certified letters were marked "forwarding order expired." Tsann Kuen states that in both *Jones, supra,* and *Wilson, supra,* "the landowner's lack of notice was due to their own failure to claim the certified letter providing notice, as the State Land Commissioner sent a letter to the landowner's correct address." Tsann Kuen ignores the fact that its lack of notice was due to its own failure to notify the tax collector that it had changed its address. As previously stated, § 26-35-705 provides, in part, that "[i]n the event that the address of the taxpayer changes, the taxpayer has an obligation to furnish the correct address."

In *Jones, supra,* we noted that § 26-37-301 "does not require the Land Commissioner to take every step possible to see that the letter arrives in the property owner's hand; it only requires that the Commissioner 'shall notify the owner, at the owner's last known address, by certified mail, of the owner's right to redeem [the property.]' " *Jones,* 352 Ark. at 45. Still, Tsann Kuen argues that, after receiving the returned letters, the State was on notice that it did not have Tsann Kuen's correct address and, at that point,

the State should have simply posted a written notice on the door of the property or sent a notice to the physical address of the property.

In support of this argument, Tsann Kuen contends that the General Assembly seems to have recognized the unfairness present in § 26-37-301 because in 2003, the legislature amended § 26-37-301 to require the Commissioner to provide actual notice in certain circumstances. Act 1376 of 2003 provides, in part:

> If the Commissioner of State Lands fails to receive proof that the notice sent by certified mail under this section was received by the owner of a homestead . . . then the Commissioner of State Lands or his or her designee shall provide actual notice to the owner of a homestead . . . by personal service of process at least sixty (60) days before the date of sale.

Tsann argues that "[s]ince the legislature did not make some provision to make actual notice to non-resident, non-homestead landowners more probable, the statute as present[ly] written denies those landowners proper notice."

The problem with this argument is that Act 1376 of 2003 does not become effective until January 1, 2004. We have stated that a litigant has standing to challenge the constitutionality of a statute if the law is unconstitutional as applied to that particular litigant. *Chapman v. Bevilacqua*, 344 Ark. 262, 42 S.W.3d 378 (2001). The general rule is that one must have suffered injury or belong to that class that is prejudiced in order to have standing to challenge the validity of a law. *Id.* Tsann Kuen cannot show that it suffered injury due to the application of the amended version of § 26-37-301 since the amended version does not become effective until January 1, 2004, and was not applied in the present case.

In essence, Tsann Kuen is arguing, hypothetically, that if § 26-37-301, as amended, had been applied in the present case, then Tsann Kuen, as a nonresident, "non-homestead" landowner would have been unconstitutionally denied proper notice. This court has consistently refused to issue advisory opinions based on facts not in evidence and events that have not yet occurred. *Harris v. City of Little Rock*, 344 Ark. 95, 40 S.W.3d 214 (2001). In addition, we have held that courts do not sit for the purpose of determining speculative and abstract questions of law or laying

down rules for future conduct. *Id.* If we were to address Tsann Kuen's argument concerning the constitutionality of § 26-37-301, as amended, we would be issuing an advisory opinion. This we will not do.

Tsann Kuen next contends that since posting notice on the affected property is required by other, current Arkansas statutes, then notice should be posted on property that is subject to tax sales. To support its argument, Tsann Kuen points to Ark. Code Ann. § 28-51-304(4) (1987), which provides that in sales of real property at public auction:

> If the property is appraised at not more than five hundred dollars ($500), in lieu of newspaper publication the personal representative may post the notice in the courthouse of each county in which the property is situated in a conspicuous place near a principal entrance, post the notice on each tract to be sold, and post three (3) additional notices in each county in which the property is situated.

This statute provides guidelines for providing notice *in lieu of newspaper publication,* when the property appraises for $500.00 or less. That is, under § 28-51-304, notice by newspaper publication *alone* will suffice. Thus, § 28-51-304, which Tsann Kuen offers in support of its argument, requires less notice than § 26-37-301, which requires notice by both newspaper publication and notice by certified mail to the last known address of the property owner.

Finally, Tsann Kuen cites Ark. Code Ann. § 14-54-902(a) (Repl. 1998), the statute governing notice to unknown or nonresident owners in cases of the regulation of unsanitary conditions, which provides, in part:

> (a) In case the owner of any lot or other real property is unknown or his whereabouts is not known or he is a nonresident of this state, then a copy of the written notice referred to in § 14-54-903 [notice to owner to correct problems concerning unsanitary conditions] shall be posted upon the premises. . . .

Once the written notice is posted, "service of the publication, as provided for by law against nonresident defendants, may be had. An attorney ad litem shall be appointed to notify the defendant by registered letter addressed to his last known place of residence if it can be found." Ark. Code Ann. § 14-54-902(b) (Repl. 1998).

Tsann Kuen states: "Certainly, if notice can be posted prior to trimming weeds, it is possible to post notice on the property prior to a much greater deprivation of ownership rights—selling the landowner's property." As previously stated, the Commissioner contends that it is responsible for 18,000 tracts of land and that when a parcel of land is certified, it is provided only with a legal description of the land and not the physical address of the property. Thus, if required to post notice on the property subject to tax sale, the Commissioner would be required to research the records at the county level to obtain the physical address of the property. Then, the Commissioner would be required to post the notice on the property, regardless of where the property is located within the state. Undoubtedly, this would create fiscal and administrative burdens for the Commissioner.

On the other hand, Ark. Code Ann. § 14-54-902 creates only a slight burden to municipalities. This section must be read in conjunction with Ark. Code Ann. § 14-54-901 (Repl. 1998), which provides:

> Incorporated towns and cities of the first and second class are empowered to order the owner of lots and other real property within their towns or cities to cut weeds; to remove garbage, rubbish, and other unsightly and unsanitary articles and things upon the property; and to eliminate, fill up, or remove stagnant pools of water or any other unsanitary thing, place, or condition which might become a breeding place for mosquitoes, flies, and germs harmful to the health of the community, after the town or city has provided therefor by an ordinance to that effect.

Obviously, a municipality which orders the owner of lots and other real property to cut weeds, remove garbage, etc., on the owner's property will have the physical address of the property. The municipality must have the physical address of the property before it can determine if conditions on the property constitute a violation of an ordinance. Thus, unlike the Commissioner, the municipality will not be required to research records, in various locations across the State, to determine where notice must be posted. In addition, it is likely that the number of lots of real property in a municipality that are in violation of an ordinance concerning unsanitary conditions is far less than the number of parcels of real property in the entire state that are subject to tax sale.

■ We also note that the notice requirement in § 14-54-902 differs from the notice requirement in § 26-37-301 in that, unlike § 26-37-301, § 14-54-902 does not require notice by certified mail. *See* Ark. Code Ann. § 14-54-902(c) (Repl. 1998). In sum, the notice requirements within the Code vary according to the purpose of each statute. So long as the notice provided is "reasonably calculated" to apprise interested parties of the pendency of the action, the notice will pass constitutional muster.

Courts in other jurisdictions have held that due process requirements are satisfied when a tax collector sends notice to the last known address of the owner of the property. *See, e.g., Elizondo v. Read,* 588 N.E.2d 501, 504 (Ind. 1992) (holding that due process requirements are satisfied when the auditor sends notice to the "last address of the owner of the specific property in question of which the auditor has knowledge from records maintained in its office."); *Smith v. Cliffs on the Bay Condominium Ass'n,* 463 Mich. 420, 617 N.W.2d 536 (2000) (stating that the procedures by which the plaintiffs obtained a tax-sale title to property was constitutional, even when one of the notices was returned by the post office as undeliverable, where the notice of the tax sale was sent to the defendant's tax address of record); *Dahn v. Trownsell,* 576 N.W.2d 535 (S.D. 1998) (stating that due process requirements were satisfied by mailing the tax notice to the tax debtor's "last known address.").

■ In *Dahn, supra,* the Supreme Court of South Dakota discussed a taxpayer's duty to inform county officials of his current address, stating:

> The realities of this case are that counties rely upon the cooperation of property owners to provide accurate information so that counties may discharge their taxation duties efficiently and effectively. Furthermore, it is not practical to place the burden upon counties to maintain current addresses on every owner of property within the county. As individual property owners change their residence, it is incumbent upon them to notify counties of their address. It is also not an unduly burdensome task to fill out a change of address form sent with the tax notice and return it to the county.

*Dahn,* 576 N.W.2d 535, 540 (S.D. 1998). Likewise, pursuant to § 26-35-705, it is the taxpayer's burden to furnish his or her change of address, not the Commissioner's burden to maintain correct addresses of every property owner in the state.

As to Tsann Kuen's argument that the Commissioner, upon learning that the notices were returned as undeliverable, should have either posted notice on the property or mailed notice to the physical address of the property, we find the reasoning of the Supreme Court of Michigan in *Smith, supra,* to be instructive:

> No matter what efforts are made to give notice, the owner who has not, in fact, been provided notice will always contend that something more could have been done. This will make the process of tax sales completely unpredictable, destroying the government's ability to recoup unpaid taxes by foreclosing and reselling. For due process purposes, the focus must be on the constitutional adequacy of the statutory procedure and not whether some additional effort in a particular case would have in fact led to a more certain means of notice.

*Smith,* 463 Mich. at 431, 617 N.W.2d at 542. We agree, and we hold that Ark. Code Ann. § 26-37-301 (Repl. 1997), fulfills constitutional due process requirements and provides sufficient notice to nonresident landowners prior to their property being sold.

Affirmed.