Justice Thomas,
with whom
Justice Scalia and Justice Kennedy join, dissenting.
When petitioner failed to pay his property taxes for several consecutive years, respondent Commissioner of State Lands in Arkansas, using the record address that petitioner provided to the State, sent petitioner a letter by certified mail, noting his tax delinquency and explaining that his property would be subject to public sale if the delinquent taxes and penalties were not paid. After petitioner failed to respond, the State also published notice of the delinquency and public sale in an Arkansas newspaper. Soon after respondent Linda K. Flowers submitted a purchase offer to the State, it sent petitioner a second letter by certified mail ex *240 plaining that the sale would proceed if the delinquent taxes and penalties were not paid.
Petitioner argues that the State violated his rights under the Due Process Clause of the Fourteenth Amendment because, in his view, the State failed to take sufficient steps to contact him before selling his property to Flowers. Petitioner contends that once the State became aware that he had not claimed the certified mail, it was constitutionally obligated to employ additional methods to locate him.
Adopting petitioner’s arguments, the Court holds today that “when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so.” Ante, at 225. The Court concludes that it was practicable for Arkansas to take additional steps here — namely, notice by regular mail, posting notice on petitioner’s door, and addressing mail to “‘occupant.’” Ante, at 235. Because, under this Court’s precedents, the State’s notice methods clearly satisfy the requirements of the Due Process Clause, I respectfully dissent.
I
The Fourteenth Amendment prohibits the States from “depriving] any person of life, liberty, or property, without due process of law.” This Court has held that a State must provide an individual with notice and opportunity to be heard before the State may deprive him of his property. Mullane v. Central Hanover Bank & Trust Co., 339 U. S. 306, 313 (1950). Balancing a State’s interest in efficiently managing its administrative system and an individual’s interest in adequate notice, this Court has held that a State must provide “notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action.” Id., at 313-314. As this Court has explained, “when notice is a person’s due ... [t]he means employed must be such as one desirous of actually informing the absentee *241 might reasonably adopt to accomplish it.” Id., at 315. “[H]eroic efforts,” however, are not required. Dusenbery v. United States, 534 U. S. 161, 170 (2002). To the contrary, we have expressly rejected “[a] construction of the Due Process Clause which would place impossible or impractical obstacles in the way [of the State].” Mullane, supra, at 313-314. Thus, “none of our cases . . . has required actual notice”; instead, “we have allowed the Government to defend the ‘reasonableness and hence the constitutional validity of any chosen method... on the ground that it is in itself reasonably certain to inform those affected.’” Dusenbery, supra, at 169-170 (quoting Mullane, supra, at 315).
The methods of notice employed by Arkansas were reasonably calculated to inform petitioner of proceedings affecting his property interest and thus satisfy the requirements of the Due Process Clause. The State mailed a notice by certified letter to the address provided by petitioner. The certified letter was returned to the State marked “unclaimed” after three attempts to deliver it. The State then published a notice of public sale containing redemption information in the Arkansas Democrat Gazette newspaper. After Flowers submitted a purchase offer, the State sent yet another certified letter to petitioner at his record address. That letter, too, was returned to the State marked “unclaimed” after three delivery attempts.[1]
Arkansas’ attempts to contact petitioner by certified mail at his “record address,” without more, satisfy due process. *242 Dusenbery, supra, at 169. See also Mullane, supra, at 318; Tulsa Professional Collection Services, Inc. v. Pope, 485 U. S. 478, 490 (1988) (“We have repeatedly recognized that mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice”); Mennonite Bd. of Missions v. Adams, 462 U. S. 791, 792, 798 (1983) (holding that “notice mailed to [the affected party’s] last known available address” is sufficient where a State seeks to sell “real property on which payments of property taxes have been delinquent” (emphasis added)). Because the notices were sent to the address provided by petitioner himself, the State had an especially sound basis for determining that notice would reach him. Moreover, Arkansas exceeded the constitutional minimum by additionally publishing notice in a local newspaper.[2] See Mullane, supra, at 318. Due process requires nothing more — and certainly not here, where petitioner had a statutory duty to pay his taxes and to report any change of address to the state taxing authority. See Ark. Code Ann. §26-35-705 (1997).
My conclusion that Arkansas’ notice methods satisfy due process is reinforced by the well-established presumption that individuals, especially those owning property, act in their own interest. Recognizing that “ ‘[i]t is the part of common prudence for all those who have any interest in [a thing], to guard that interest by persons who are in a situation to protect it,”’ Mullane, supra, at 316 (quoting The Mary, 9 Cranch 126, 144 (1815)), this Court has concluded that “[t]he ways of an owner with tangible property are such that he usually arranges means to learn of any direct attack upon his possessory or proprietary rights,” Mullane, 339 U. S., at 316. Consistent with this observation, Arkansas was free to “indulge the assumption” that petitioner had *243 either provided the state taxing authority with a correct and up-to-date mailing address — as required by state law — “or that he ... left some caretaker under a duty to let him know that [his property was] being jeopardized.”[3] Ibid.
The Court does not conclude that certified mail is inherently insufficient as a means of notice, but rather that “the government’s knowledge that notice pursuant to the normal procedure was ineffective triggered an obligation on the government’s part to take additional steps to effect notice.” Ante, at 230. I disagree.
First, whether a method of notice is reasonably calculated to notify the interested party is determined ex ante, i. e., from the viewpoint of the government agency at the time its notice is sent. This follows from Mullane, where this Court rested its analysis on the information the sender had “at hand” when its notice was sent. 339 U. S., at 318. Relatedly, we have refused to evaluate the reasonableness of a particular method of notice by comparing it to alternative methods that are identified after the fact. See Dusenbery, 534 U. S., at 171-172. Today the Court appears to abandon both of these practices. Its rejection of Arkansas’ selected method of notice — a method this Court has repeatedly concluded is constitutionally sufficient — is based upon information that was unavailable when notice was sent. Indeed, the Court’s proposed notice methods — regular mail, posting, and addressing mail to “‘occupant,’” ante, at 234-235 — are entirely the product of post hoc considerations, including the discovery that members of petitioner’s family continued to live in the house. Similarly, the Court’s observation that “[t]he Commissioner[’s] eomplainft] about the burden of . . . additional steps ... is belied by Arkansas’ current requirement that notice to homestead owners be accomplished by personal service if certified mail is returned,” ante, at *244 236, is contrary to Dusenbery’s “conclusion that the Government ought not be penalized and told to ‘try harder’ . . . simply because [it] has since upgraded its policies,” 534 U. S., at 172.
Second, implicit in our holding that due process does not require “actual notice,” see id., at 169-170, is that when the “government becomes aware . . . that its attempt at notice has failed,” ante, at 227, it is not required to take additional steps to ensure that notice has been received. Petitioner’s challenge to Arkansas’ notice methods, and the Court’s acceptance of it, is little more than a thinly veiled attack on Dusenbery. Under the majority’s logic, each time a doubt is raised with respect to whether notice has reached an interested party, the State will have to consider additional means better calculated to achieve notice. Because this rule turns on speculative, newly acquired information, it has no natural end point, and, in effect, requires the States to achieve something close to actual notice. The majority’s new rule is contrary to Dusenbery and a significant departure from Mullane.
The only circumstances in which this Court has found notice by mail and publication inadequate under the Due Process Clause involve situations where the state or local government knew at the outset that its notice efforts were destined to fail and knew how to rectify the problem prior to sending notice. See Robinson v. Hanrahan, 409 U. S. 38, 39 (1972) (per curiam) (intended recipient known to be in jail); Covey v. Town of Somers, 351 U. S. 141, 145 (1956) (intended recipient known to be incompetent and without a guardian).
In Robinson, the State, having arrested petitioner and having detained him in county jail, immediately instituted forfeiture proceedings against his automobile and mailed notice of those proceedings to his residential address. 409 U. S., at 38. Robinson, who was incarcerated in the county jail during the entirety of the forfeiture proceedings, did not receive notice of the proceedings until after he was released *245 and the forfeiture order had been entered. Id., at 38-39. Because the State knew beforehand that Robinson was not at, and had no access to, the address to which it sent the notice, this Court held that the State’s efforts were not “ ‘reasonably calculated’” to notify him of the pending proceedings. Id., at 40. Similarly, in Covey, the Court concluded that the methods of notice used by the town — mailing, posting, and publishing — were not reasonably calculated to inform Covey of proceedings adverse to her property interests because local officials knew prior to sending notice that she was “without mental capacity to handle her affairs” and unable to comprehend the meaning of the notices. 351 U. S., at 144, 146.
By contrast, Arkansas did not know at the time it sent notice to petitioner that its method would fail, and Arkansas did not know that petitioner no longer lived at the record address simply because letters were returned “unclaimed.” Pet. for Cert. 3. “[U]nclaimed” does not necessarily mean that an address is no longer correct; it may indicate that an intended recipient has simply failed or refused to claim mail. See United States Postal Service, Domestic Mail Manual (DMM), §507, Exh. 1.4.1, http://pe.usps.gov/ text/dmm300/507.htm.[4] Given that the State had been using the address provided by petitioner and that petitioner had a legal duty to maintain a current mailing address with the state taxing authority, return of the mail as “unclaimed” did not arm Arkansas with the type of specific knowledge that the governments had at hand in Robinson and Covey. Cf. ante, at 234. The State cannot be charged to correct a problem of petitioner’s own creation and of which it was not *246 aware.[5] Even if the State had divined that petitioner was no longer at the record address, its publication of notice in a local newspaper would have sufficed because Mullane authorizes the use of publication when the record address is unknown. See 339 U. S., at 316 (“ [Publication traditionally has been acceptable as notification supplemental to other action which in itself may reasonably be expected to convey a warning”).
II
The Court’s proposed methods, aside from being constitutionally unnecessary, are also burdensome, impractical, and no more likely to effect notice than the methods actually employed by the State.
In Arkansas, approximately 18,000 parcels of delinquent real estate are certified annually. Tsann Kuen Enterprises Co. v. Campbell, 355 Ark. 110, 119-120, 129 S. W. 3d 822, 828 (2003). Under the Court’s rule, the State will bear the burden of locating thousands of delinquent property owners. These administrative burdens are not compelled by the Due Process Clause. See Mullane, supra, at 313-314; Tulsa Professional Collection Services, Inc., 485 U. S., at 489-490 (stating that constitutionally sufficient notice “need not be inefficient or burdensome”). Here, Arkansas has determined that its law requiring property owners to maintain a current address with the state taxing authority, in conjunction with its authorization to send property notices to the record address, is an efficient and fair way to administer its tax collection system. The Court’s decision today forecloses *247 such a reasonable system and burdens the State with inefficiencies caused by delinquent taxpayers.
Moreover, the Court’s proposed methods are no more reasonably calculated to achieve notice than the methods employed by the State here. Regular mail is hardly foolproof; indeed, it is arguably less effective than certified mail. Certified mail is tracked, delivery attempts are recorded, actual delivery is logged, and notices are posted to alert someone at the residence that certified mail is being held at a local post office. By creating a record, these features give parties grounds for defending or challenging notice. By contrast, regular mail is untraceable; there is no record of either delivery or receipt. Had the State used regular mail, petitioner would presumably argue that it should have sent notice by certified mail because it creates a paper trail.[6]
The Court itself recognizes the deficiencies of its proposed methods. It acknowledges that “[Hollowing up with regular mail might... increase the chances of actual notice”; “occupants who ignored certified mail notice slips ... might scrawl the owner’s new address on the notice packet,” ante, at 235 (emphasis added); and “a letter addressed to [occupant] might be opened and read,” ibid, (emphasis added). Nevertheless, the Court justifies its redrafting of Arkansas’ notice statute *248 on the ground that “[its] approaches] would increase the likelihood that the owner would be notified that he was about to lose his property . . . Ibid. That, however, is not the test; indeed, we rejected such reasoning in Dusenbery. See 534 U. S., at 171 (rejecting the argument that “the FBI’s notice was constitutionally flawed because it was ‘substantially less likely to bring home notice’ than a feasible substitute” (some internal quotation marks omitted)).
The Court’s suggestion that Arkansas post notice is similarly unavailing. The State’s records are organized by legal description, not address, which makes the prospect of physically locating tens of thousands of properties every year, and posting notice on each, impractical. See Tsann Kuen Enterprises Co., supra, at 119-120, 129 S. W. 3d, at 828. Also, this Court has previously concluded that posting is an inherently unreliable method of notice. See Greene v. Lindsey, 456 U. S. 444, 453-454 (1982).
Similarly, addressing the mail to “ ‘occupant,’ ” see ante, at 235, is no more reasonably calculated to reach petitioner. It is sheer speculation to assume, as the Court does, that although “[o]ccupants . . . might disregard a certified mail slip ,a letter addressed to them (even as ‘occupant’) might be opened and read.” Ibid. It is at least as likely that an occupant who receives generically addressed mail will discard it as junk mail.
Ill
If “title to property should not depend on [factual] vagaries,” Dusenbery, supra, at 171, then certainly it cannot turn on “wrinkle[s],” ante, at 227, caused by a property owner’s own failure to be a prudent ward of his interests. The meaning of the Constitution should not turn on the antics of tax evaders and scofflaws. Nor is the self-created conundrum in which petitioner finds himself a legitimate ground for imposing additional constitutional obligations on the State. The State’s attempts to notify petitioner by certified *249 mail at the address that he provided and, additionally, by publishing notice in a local newspaper satisfy due process. Accordingly, I would affirm the judgment of the Arkansas Supreme Court.

 Though the Court posits that “there is no record evidence that notices of attempted delivery were left at 717 North Bryan Street,” ante, at 233, the postal carrier was required to leave notice at the address at each delivery attempt indicating that delivery of certified mail had been attempted and that the mail could be retrieved at the local post office. See United States Postal Operations Manual §813.25 (July 2002), http:// www.nalc.org/depart/cau/pdf/manuals/pom/pomc8.pdf (all Internet materials as visited Apr. 21, 2006, and available in Clerk of Court’s case file) (“The carrier must leave a notice of arrival on Form 3849 if the carrier cannot deliver the certified article for any reason”).

 The Court found inadequate the State’s attempt at notice by publication, as if that were the State’s sole method for effectuating notice, see ante, at 237. But the State plainly used it here as a secondary method of notice.

 The issue is not, as the Court maintains, whether the current occupant is “charged with acting as the owner’s agent.” Ante, at 233. Rather, the issue is whether petitioner discharged his own duty to guard his interests.

 The Postal Service uses “Moved, Left No Address” to indicate that the “[a]ddressee moved and filed no change-of-address order,” and “Not Deliverable as Addressed — Unable to Forward” to indicate that the mail is “undeliverable at address given; no change-of-address order on file; forwarding order expired.” DMM § 507, Exh. 1.4.1.

 The Court’s “storm drain” hypothetical, ante, at 229, presents the harder question of when notice is sent — at the precise moment the Commissioner places the mail in the postal carrier’s hand or the split second later when he observes the departing carrier drop the mail down the storm drain. That more difficult question is not before us in this case because Arkansas learned long after the fact that its attempts had been unsuccessful.

 Interestingly, the Court stops short of saddling the State with the other steps that petitioner argues a State should take any time the interested party fails to claim letters mailed to his record address, see ante, at 235-236, namely, searching state tax records, the phonebook, the Internet, department of motor vehicle records, or voting rolls, contacting his employer, or employing debt collectors. Here, the Court reasons that because of the context — the fact that the letter was returned merely “unclaimed” and petitioner had a duty to maintain a current address — the State is not required to go as far as petitioner urges. Ante, at 236. Though the methods proposed by petitioner are severely flawed (for instance, the commonality of his surname “Jones” calls into question the fruitfulness of Internet and phonebook searches), there is no principled basis for the Court’s conclusion that petitioner’s other proposed methods would “impos[e] burdens on the State significantly greater than the several relatively easy options outlined [by the Court].” Ibid.