The Honorable John Thurston Commissioner of State Lands
109 State Capitol Building Little Rock, Arkansas 77701
Dear Commissioner Thurston:
This is my opinion on your questions about the constitutionality of a statute governing disposition of severed mineral interests forfeited to the state for property tax nonpayment.[1] *Page 2 
The statute requires the Commissioner of State Lands to notify the owner by certified mail when severed mineral interests are forfeited. A.C.A. § 26-37-314(a)(1), (2). The owner may redeem the interests during a specified redemption period and, provided they have not been sold, at any time thereafter. A.C.A. § 26-37-314(a)(4)(A). After the redemption period, the surface owner may opt to purchase the unredeemed interests. A.C.A. § 26-37-314(b)(1). The statute prohibits sale to any other person. A.C.A. § 26-37-314(a)(3)(A).
You suggest that the statute may violate constitutional guarantees of due process in providing inadequate notice to the owner, and equal protection in favoring the surface owner over others who may wish to purchase forfeited and unredeemed severed mineral interests, just as they are able to purchase other forfeited and unredeemed real property.
You refer without citation to "a 2009 law review article" questioning the statute's constitutionality. I assume the reference is to Drew T. Sadler, Legislative Note, Mineral Rights? TheConstitutional Deficiency of Section 26-37-314 of the ArkansasCode, 62 ARK. L. REV. 611 (2009), which concludes that the statute is unconstitutional on both grounds.
RESPONSE
In my opinion, the statute is not unconstitutional on due process grounds on its face or, in many or most instances, as applied. But, in a particular case and depending on all the facts and circumstances of that case, bare application of the statute's notice provision may result in a violation of the owner's due process right to notice.
In my further opinion, the statute is not unconstitutional on equal protection grounds. *Page 3 
Due Process Before the government may deprive a person of property, the Due Process Clause of the Fourteenth Amendment[2] requires that such adjudication "be preceded by notice and opportunity for hearing appropriate to the nature of the case." Mullane v. Central Hanover Bank Trust Co., 339 U.S. 306, 313, 70 S. Ct. 652, 656-57, 94 L. Ed. 865 (1950). Although due process does not require actual notice, Dusenbery v. United States, 534 U.S. 161, 170, 122 S. Ct. 694, 701, 151 L. Ed. 2d 597 (2002), it does require "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane, 339 U.S. at 314, 70 S. Ct. at 657. The "notice required will vary with circumstances and conditions." Walker v. City of Hutchinson, Kansas, 352 U.S. 112, 115, 77 S. Ct. 200, 202, 1 L. Ed. 2d 178 (1956).
Linn Farms Timber Ltd. P'ship v. Union Pac. R.R. Co., No. 4:09CV00663 JLH,2010 WL 2197132, at *2 (E.D. Ark. May 25, 2010).
Another Arkansas statute, not the one you ask about, applies to all tax-delinquent land forfeited to the state. A.C.A. § 26-37-301 (Supp. 2011). It requires the Commissioner to notify the owner of the right to redeem, and of the property's impending sale absent redemption. A.C.A. § 26-37-301(a), (b). Before 2007, the statute required the notice to be sent only by certified mail to the owner's last known address. A.C.A. § 26-37-301(a)(1) (Supp. 2005).
In 2006, in a case involving that statute, the United States Supreme Court held that due process required the Commissioner to take additional reasonable steps, if any were available, to notify an owner when he became aware that his effort to provide notice in the manner then required by the statute had failed. Jones v.Flowers, 547 U.S. 220 (2006).
In response to Jones, the General Assembly amended the statute to require the Commissioner to take specified additional steps to notify the owner when the *Page 4 
certified-mail notice is returned. Act 706 of 2007, codified in relevant part at A.C.A. § 26-37-301(a)(3), (4) (Supp. 2011).
The statute at issue in your request has not been amended to account for Jones; it continues to require notice by certified mail only. A.C.A. § 26-37-314(a)(2).
In Linn Farms, supra, the district court applied the rule ofJones to proceedings under A.C.A. § 26-37-314 and held that due process requires the Commissioner to take additional reasonable steps, if any are available, to notify an owner of severed mineral interests when he becomes aware that his effort to provide notice in the manner required by the statute has failed.
Note that neither Jones nor Linn Farms held that the statute considered was inherently unconstitutional. Instead, in each case the court found a due process violation resulted from the particular facts and circumstances of the case, namely that the Commissioner, upon learning that bare compliance with the statute's notice provision had failed to accomplish actual notice, had not taken additional reasonable steps to accomplish actual notice, even though such additional reasonable steps were available in the particular case. In Linn Farms especially, the additional reasonable steps found to be available to the Commissioner were very much specific to the case and even to the particular party to be notified, another division of the Commissioner's office possessing a valid mailing address for the corporate owner.
It is clear, consequently, that the statute is not unconstitutional on due process grounds on its face or, in many or most instances, as applied.[3] Certified mail *Page 5 
addressed to the owner's last known address will afford the owner actual notice in many or most cases, and there will be no due process violation in any such case. Only when the Commissioner becomes aware in a particular case that the notice described in the statute has not reached the owner, and thereafter fails to take additional reasonable steps that are available in that case, [4]
will a due process violation as described in Jones and LinnFarms occur.
In summary, then, it is my opinion that the statute is not unconstitutional on due process grounds on its face or, in many or most instances, as applied. But, in a particular case and depending on all the facts and circumstances of that case, bare application of the statute's notice provision may result in a violation of the owner's due process right to notice.
Equal Protection
The United States Constitution prohibits a state from denying "to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Our state constitution contains similar guarantees of equal treatment before the law. Ark. Const. art. 2, §§ 3, 18.
 The equal protection doctrine prohibits certain types of "classifications" that result in the disparate treatment of those who are similarly situated. Classifications in and of themselves do not violate the equal protection doctrine. In order to establish an equal protection violation arising out of a *Page 6 
classification that does not affect a suspect class or a fundamental right, it is necessary to show that the disparity is arbitrary — that is, that the disparity has no conceivable rational basis or rational relation to a legitimate end. In reviewing the constitutionality of a classification that does not affect a suspect class or a fundamental right, the courts must not only presume the constitutionality of the challenged classification; they must further uphold the classification even without requiring a showing of an actual rational basis, so long as any conceivable rational basis for the scheme can be adduced — even a hypothetical one.
Op. Att'y Gen. 2011-047 (citations omitted).
The statute at issue creates a classification between the surface owner, on the one hand, and everyone else, on the other. A.C.A. § 26-37-314(a)(3)(A), (b)(1). It favors the surface owner in that the Commissioner must sell forfeited and unredeemed severed mineral interests to a surface owner who wishes to purchase, but may not sell them to anyone else. Id.
In my opinion, the statute's distinction between the surface owner and everyone else does not affect a fundamental right, such as voting, or operate on a suspect classification, such as race.[5]
Accordingly, a court would uphold the classification if any rational basis for it could be found or hypothesized. *Page 7 
What might be such a rational basis? In Texaco,Inc. v. Short, 454 U.S. 516 (1982), the Court upheld a state statute providing that severed mineral interests unused for 20 years lapse and revert to the current surface owner. The Court quoted a state supreme court's explanation of the statute's purpose:
 The existence of . . . stale and abandoned [severed mineral] interests creates uncertainties in titles and constitutes an impediment to the development of the mineral interests that may be present and to the development of the surface rights as well. The [challenged statute] removes this impediment by returning the severed mineral estate to the surface rights owner. There is a decided public interest to be served when this occurs. The extinguishment of such an interest makes the entire productive potential of the property again available for human use.
Id. at 523 (quoting Short v. Texaco, Inc.,273 Ind. 518, 520, 406 N.E.2d 625 (1980)).[6] *Page 8 
Here, I believe the General Assembly could have rationally determined that forfeited severed mineral interests should be sold only to the surface owner in order to promote certainty and simplicity in land titles and to facilitate real property development, both of which are legitimate public goals. There being a rational basis for the classification made in the law, it is my opinion that it would be upheld against an equal protection challenge.
Assistant Attorney General J. M. Barker prepared this opinion, which I approve.
Sincerely,
DUSTIN McDANIEL
Attorney General
DM/JMB:cyh
[1] The statute provides in relevant part:
 26-37-314. Sale of tax delinquent severed mineral interests prohibited.
 (a)(1) When severed mineral interests are forfeited to the state and conveyed by certification to the Commissioner of State Lands for nonpayment of property taxes, title to the severed mineral interests shall vest in the State of Arkansas in the care of the Commissioner of State Lands.
 (2) The Commissioner of State Lands shall so notify the owner of record by certified mail at his or her last known address.
 (3)(A) Except as provided in subsection (b) of this section, the Commissioner of State Lands shall not sell the severed mineral interests but shall retain the severed mineral interests indefinitely for redemption.
 . . .
 (4)(A) The tax-delinquent severed mineral interests may be redeemed at any time in the manner prescribed for the redemption of tax-delinquent real property.
 . . .
 (b)(1) After the expiration of the redemption period prescribed by this subchapter, the Commissioner of State Lands shall sell the severed mineral interests to the surface owners if the surface owners opt to purchase the tax-delinquent severed mineral interests.
 (2) The surface owner purchasing severed mineral interests under subdivision (b)(1) of this section shall be allowed to purchase the severed mineral interests for an amount equal to the delinquent taxes and shall not be required to pay any interest or penalties if the surface owner was not the owner of the severed mineral interests at the time the taxes became delinquent.
 . . .
A.C.A. § 26-37-314 (Supp. 2011).
[2] Our state constitution also prohibits deprivation of property without due process of law. Ark. Const. art. 2, § 8.
[3] In a case addressing the adequacy of notice of a Commissioner's sale, the Supreme Court of Arkansas noted that
 a litigant has standing to challenge the constitutionality of a statute if the law is unconstitutional as applied to that particular litigant. Chapman v. Bevilacqua, 344 Ark. 262, 42 S.W.3d 378 (2001). The general rule is that one must have suffered injury or belong to that class that is prejudiced in order to have standing to challenge the validity of a law. Id.
Tsann Kuen Enter. Co. v. Campbell,355 Ark. 110, 122, 129 S.W.3d 822 (2003). Cf.
A.C.A. § 26-37-301(f) ("validity of a notice under this section may be challenged only by an owner . . . that did not receive notice in substantial compliance with this section"). I do not, accordingly, opine that A.C.A. § 26-37-314 is unconstitutional on its face or that an owner's due process rights are in any way compromised in a case where the owner actually receives the notice described in the statute.
[4] Severed mineral interests are "subject to the tax laws governing forfeiture and sale of tax-delinquent land," just as other estates in land are subject to such laws. A.C.A. § 26-37-210(a) (Supp. 2011). The statute amended in response to Jones, A.C.A. § 26-37-301, is such a law. It applies whenever the Commissioner receives any "tax-delinquent land" and protects persons having any interest in that land. A.C.A. § 26-37-301(a), (c). Nothing expressly exempts severed mineral interests from A.C.A. § 26-37-301. One might argue, then, that A.C.A. § 26-37-301, including its Jones-inspired additional notice requirements, applies to proceedings relating to severed mineral interests, notwithstanding that A.C.A. § 26-37-314 contains a notice provision applicable only to such proceedings. Regardless of how a court might treat such an argument, no law prohibits the Commissioner from employing the additional notice provisions of A.C.A. § 26-37-301, as appropriate, in proceedings relating to severed mineral interests. I state no opinion on whether a court considering a due process claim would hold employment of those additional notice requirements alone to be adequate in a case where the owner still did not receive actual notice. Such a determination would depend on all the facts and circumstances of the particular case.
[5] The law review article you cite maintains that the statute affects "the fundamental right to own property" and "the fundamental right to acquire property without government interference." Sadler,supra, at 621 (citations omitted). Certainly there is a fundamental right to acquire and own property. Our state constitution, for instance, provides that "[a]ll men . . . have certain inherent and inalienable rights; amongst which are those of . . . acquiring [and] possessing . . . property. . . ." Ark. Const. art. 2, § 2. But it is clear beyond argument that the government may, and frequently does, restrict the right to acquire and possess property. Restrictions may depend on, perhaps among other things, the property's character (e.g., explosives), the manner of acquisition (e.g., fraud), or the status of the person desiring to acquire property of a particular character (e.g., felons and firearms). The law review article cites theSlaughter-House Cases, 83 U.S. 36 (1872), as evidence of the right to own property and Buchanan v. Warley,245 U.S. 60 (1917), as evidence of a "right to acquire property without government interference." Sadler, supra, at 621. I do not dispute the existence of these rights, though the latter is in my view overstated and might more accurately be characterized as a right to acquire property without undue government interference. But the cases cited, the newest of which is almost a century old, do not support the proposition that there exists a fundamental right to acquire any particular piece of property or to compel the government to offer property owned by it to everyone or to everyone on the same terms. The majority opinion in theSlaughter-House Cases referred to the right to acquire and possess property as one of the privileges and immunities of citizenship of a state, but it did not address that right in a context anything like the circumstances of a Commissioner's sale of forfeited and unredeemed severed mineral interests, nor did it characterize a deprivation of that right as a denial of equal protection. In fact, it expressly predicted an equal protection jurisprudence much narrower than what has in fact developed.Slaughter-House Cases, 83 U.S. at 81. In my view, the majority opinion in the Slaughter-House Cases is simply not relevant to the question at issue here. Buchanan involved a city ordinance that had the effect of prohibiting the sale of property in certain instances, depending on the prospective purchaser's race. TheBuchanan opinion recognized the right to acquire, use, and dispose of property subject, however, to "lawful enactments curtailing that right in the public interest. . . ."Buchanan, 245 U.S. at 75. The Court held that the ordinance's "attempt to prevent the alienation of the property in question to a person of color . . . is in direct violation of the fundamental law enacted in the Fourteenth Amendment of the Constitution preventing state interference with property rights except by due process of law." Id. at 82. I believe an ordinance like the one considered in Buchanan would today be regarded as violating the equal protection rights of persons identified pursuant to a suspect classification. The presence of a suspect classification being beyond argument, I doubt that a court would entertain a claim that the ordinance implicates a fundamental right. In any event, the cases cited in the law review article do not hold or in my view even suggest, and the article cites no other case or other law, old or recent, that holds or suggests, that there exists, for equal protection purposes, a fundamental right to acquire any particular piece of property or to compel the government to offer property owned by it to everyone or to everyone on the same terms. Neither, in my view, does the article convincingly so argue. I see no reason to conclude that any such right exists.
[6] Although the state supreme court referred to "returning" mineral interests to the surface owner, it was quite possible that the surface owner at the time of lapse would not have previously owned the mineral interests. *Page 1