CITY of PINE BLUFF, Arkansas; Dutch King, in His
Official Capacity as Mayor of the City of Pine Bluff, Arkansas; Irene
Holcomb, Jack Foster, Derwood Smith, Dale Dixon, Bill Brumett,
Wayne Easterly, Jackie Kirby, and Janice Roberts, in Their Official
Capacity as Aldermen of the City of Pine Bluff, Arkansas  *v.*
Jack JONES, Jefferson County Judge

06-1032                                                    258 S.W.3d 361

Supreme Court of Arkansas
Opinion delivered June 7, 2007

*Mark R. Hayes*, for appellants.

*Bachelor & Newell*, by: *C. Burt Newell*, for appellee.

Tom Glaze, Justice. In this appeal, the appellant, the City
of Pine Bluff ("the City"), and the appellee, Jefferson
County ("the County"), ask our court to decide what is meant by the
phrase "prisoners of municipalities," a term found in Ark. Code Ann.
§ 12-41-506(a)(1) (Repl. 2003). The lawsuit at issue in this case
stemmed from an October 1993 contract between the County and
the City. Under the terms of that contract, the County was to build a
thirty-two bed expansion at the Jefferson County Jail, and the City
agreed to lease from the County twenty-four of those beds, which
were to "be available to the City, at all times." In exchange for the

beds, the City agreed to pay the County $24,090 per month over the twenty-year term of the lease. The County pledged the money received from the City under the lease to retire the construction debt on the jail expansion. In March of 2004, however, the City ceased making its monthly payments.

On October 29, 2004, the County filed suit against the City and its city officials, alleging that the City had breached its contract with the County. The City responded by filing a counterclaim and requesting a declaratory judgment on May 20, 2005. The City claimed that the County had breached the parties' contract by charging the City for prisoners who were "prisoners of Jefferson County for whom the city had no financial responsibility." In addition, the City alleged that the County had not been permitting the City access to all of the twenty-four beds the City was guaranteed under the contract.

The opposing parties eventually sought a declaratory judgment from the circuit court as to the meaning of the phrase "prisoners of municipalities," as that phrase is used in § 12-41-506, which provides, in pertinent part, as follows:

> (a)(1) In the absence of an agreement on jail costs between a county and all municipalities having law enforcement agencies in the county, the quorum court in a county in this state may by ordinance establish a daily fee to be charged municipalities for keeping prisoners of municipalities in the county jail.
>
> (2) The fee shall be based upon the reasonable expenses which the county incurs in keeping such prisoners in the county jail.
>
> (b)(1) Municipalities whose prisoners are maintained in the county jail shall be responsible for paying the fee established by the quorum court in the county.
>
> (2) When a person is sentenced to a county jail for violating a municipal ordinance, the municipality shall be responsible for paying the fee established by an agreement or ordinance of the quorum court in the county.
>
> (3) Municipalities may appropriate funds to assist the county in the maintenance and operation of the county jail.

Noting that nothing in the 1993 contract defined "city prisoner" or addressed the question of when a city prisoner conceivably becomes a "county prisoner" under Arkansas law, the

County and City asked the court to craft a definition of the term. The circuit court held a hearing on the parties' motions on November 9, 2005, and entered a written order on June 16, 2006, granting the declaratory judgment and setting out its definition of "prisoners of municipalities" as follows:

> "Prisoners of municipalities" shall include persons housed in the County Jail by virtue of a pending misdemeanor charge that is pending on a city docket or a municipal docket of any court whereby the fine revenue that would be owed by the prisoner, if convicted, would be paid to the city or municipality and not to the county.
>
> "Prisoners of municipalities" further includes persons arrested by municipal law enforcement officers within the confines of the municipality upon a statutory violation which is a misdemeanor and for which the fine money would be paid to the city if they were convicted of that offense and paid the fine.
>
> "Prisoners of municipalities" further includes those persons who are arrested and charged with felonies by municipal police officers until such time as the prosecuting attorney has filed formal felony charges against those individuals to proceed against those individuals as felony cases, at which time those arrestees will then cease to be considered as "prisoners of municipalities," but instead will be the financial responsibility of the county from that point forward.

Following the court's order defining "prisoners of municipalities," the parties settled the underlying breach of contract action. However, the County and City alleged that they continued to disagree over the application of that definition insofar as it applied "to portions of the parties' settlement agreement and contract negotiations." Accordingly, the trial court entered another order on June 29, 2006, dismissing the case with prejudice. The City filed a timely notice of appeal on July 24, 2006.

On appeal, the City asks this court to reject the circuit court's definition of "prisoners of municipalities" and urges an interpretation that focuses solely on the language in § 12-41-506(b)(2) providing that when a person is "*sentenced to a county jail for violating a municipal ordinance*, the municipality shall be responsible for paying the fee established by an agreement or ordinance of the quorum court in the county." (Emphasis added.) Only in this

limited circumstance — i.e., when a prisoner is sentenced to the county jail for a municipal ordinance violation "and nothing else" — the City contends, should it be financially responsible for county jail inmates.

However, we are unable to reach the merits of the City's arguments on appeal. As mentioned above, following the trial court's order granting the declaratory judgment and setting out a definition of "prisoners of municipalities," the City and County entered into a negotiated settlement agreement in February of 2006. First, under the terms of that settlement, the City was to begin its payments, in March of 2006, for the allotted twenty-four beds in the Jefferson County Detention Center under the terms of the 1993 contract. Second, the City agreed to begin paying $8,000 per month to the Jack Jones Juvenile Justice Center for the housing of Pine Bluff juvenile detainees in that facility. Third, after payment of the December 2006 invoice for both the Jefferson County Detention Facility and the Jack Jones Juvenile Justice Center, all monthly invoices would cease, and the County and City would enter into a new agreement for the future housing of Pine Bluff detainees in both facilities.

Fourth, as further consideration for the parties' settlement, the City agreed to pay the County the sum of $75,000 on March 1, 2006, to be earmarked towards the arrearages owed to the Jack Jones Juvenile Justice Center. Fifth, the parties agreed that the City owed Jefferson County the sum of $565,000 for arrearages for past jail invoices not paid, and that the City would pay that amount in monthly installments of $23,541.66 per month over twenty-four months, beginning in January of 2007.

The sixth paragraph of the settlement agreement provided that, when the new county jail opened following its construction, the City would have the use of seventy-five beds for the housing of "City of Pine Bluff misdemeanor arrestees and convictees, City of Pine Bluff ordinance arrestees and convictees, and all City misdemeanor warrant arrestees and convictees. All other arrestees by the City of Pine Bluff will be housed at Jefferson County expense."

Seventh, the parties agreed that, in addition to those seventy-five beds, the City would have priority to use the approximately thirty beds that had been allocated for use by other cities within Jefferson County and the University of Arkansas at Pine Bluff, if those entities were not then using those beds.

The eighth paragraph provided that, at any time at which the City was not using the seventy-five beds allotted to it in the new

county jail, Jefferson County was free to use the beds. In the event that the County had placed its detainees in those beds, then the County would be responsible for accepting any City detainees and accepting financial responsibility for housing those detainees in the county jail or transporting the detainees to another facility. The agreement then required representatives of the County and City to "meet after passage of twelve months from the date the new county jail is open to determine whether the bed space as between the parties . . . is adequate for the needs of the City of Pine Bluff." Moreover, the settlement agreement provided that "a daily fee for detainee housing shall be agreed upon as soon as reasonably practical upon the opening of the new jail in the unlikely event that the City was using more beds than allotted[.]"

At oral argument before this court, counsel for the City of Pine Bluff urged that this settlement only covered "portions of the case," suggesting that the parties will still have to "go back to the negotiation table to determine additional bed space and the cost." Counsel further stated that there were "continuing negotiations . . . for a short gap of time between January of [2007] and when the jail opened in the spring of [2007]" and that the parties had to "go back and negotiate additional bed space within a year of the jail opening."

Counsel for Jefferson County, however, informed the court that any decision we might render would "not affect the settlement agreement in this pending case," but would only "affect future negotiations between Jefferson County and the City of Pine Bluff." When asked whether an opinion from this court setting out a definition different from that of the trial court would change anything in the settlement agreement, the County's counsel replied that it would not, nor would it change any of the monetary calculations in the settlement agreement. Although the County's attorney noted that the parties will have to meet again within one year of the opening of the new jail to determine whether the bed-space allocation was functioning effectively, he agreed that the "settlement agreement [would] stand" no matter what this court does. On rebuttal, the attorney for the City of Pine Bluff agreed that the monetary portions of the settlement would be unaffected by any decision of this court, and he conceded that everything in the contract would have to be renegotiated after a year.

It is apparent that any opinion we might render would have no effect on the settlement agreement negotiated between

the parties. We have long held that courts do not sit for the purpose of determining speculative and abstract questions of law or laying down rules for future conduct. *See Dodson v. Allstate Ins. Co.*, 365 Ark. 458, 231 S.W.3d 711 (2006); *Tsann Kuen Enterprises Co. v. Campbell*, 355 Ark. 110, 129 S.W.3d 822 (2003); *Harris v. City of Little Rock*, 344 Ark. 95, 40 S.W.3d 214 (2001). Generally, a case becomes moot when any judgment rendered would have no practical legal effect upon a then existing legal controversy. *See Weaver v. City of West Helena*, 367 Ark. 159, 238 S.W.3d 74 (2006); *Cotten v. Fooks*, 346 Ark. 130, 55 S.W.3d 290 (2001). When a party demonstrates only that it would like a legal opinion, but does not show that there is an ongoing controversy, we will dismiss the appeal. *See Cummings v. City of Fayetteville*, 294 Ark. 151, 152, 741 S.W.2d 638, 638 (1987). Here, due to the settlement agreement, there is no existing legal controversy; accordingly, any decision we might render would merely be an advisory opinion. This we will not do.

Appeal dismissed.

BROWN and IMBER, JJ., concur.

HANNAH, C.J., dissents.

R OBERT L. BROWN, Justice, concurring. I concur in the result largely because I do not share the conviction of the majority that a definition of "prisoners of municipalities" from this court will be wholly irrelevant to the current settlement agreement. The disagreement over the scope of the settlement does leave me unwilling to conclude that any genuine controversy remains. However, I am equally unsure that an opinion from this court will have "no practical effect."

Counsel for the City said at oral argument that a settlement agreement had been struck for use of "base beds" but that a decision by this court was needed to determine cost and usage of beds above that base figure this year, or during the term of the current settlement agreement. He thus contended that an opinion by this court would have some relevance. Counsel for the County seemed to disagree, although at one point he said at oral argument that he hoped the two parties had an agreement. In response to questioning he also said that he believes and hopes that the settlement agreement will stand no matter what this court does.

The end result, though, was that after the oral argument, I was unsure how any decision by this court on what constitutes

"prisoners of municipalities" would affect the current agreement between the City and the County. It was the City's obligation to make the viability of this issue on appeal crystal clear, and the City did not carry this burden. Hence, I concur.

IMBER, J., joins this concurring opinion.

JIM HANNAH, Chief Justice, dissenting. I respectfully dissent. The majority errs in dismissing the appeal. The circuit court properly issued declaratory judgment on the definition of "prisoners of municipalities" under Ark. Code Ann. 12-41-506(a)(1) (Repl. 2003). This case began as a breach of contract action when Jefferson County filed the action on October 29, 2004; however, the City of Pine Bluff filed a counterclaim seeking declaratory judgment. When the parties settled their dispute over the 1993 contract, they remained in a contractual relationship, under a statutory obligation with respect to paying for prisoners, and needed a definition of the term "prisoners of municipalities" under Ark. Code Ann. § 12-41-506(a)(1). The circuit court noted this in the June 29, 2006 Order appealed from. Even after the parties settled their 1993 contract issues, the question of the meaning of "prisoners of municipalities" remained. Whether under contract, under statute, or otherwise, the County and the City must still decide who was to pay for each prisoner, and the definition of "prisoners of municipalities" is needed by the parties. Declaratory judgment was a proper action to determine this question:

> Declaratory judgments are used to determine the rights and liabilities of respective parties. The purpose of a declaratory judgment is to prevent "uncertainty and insecurity with respect to rights, status, and other legal relations." Ark. Code Ann. § 16-111-102 (Repl. 1987). Under this Act, "[a]ny person interested under a . . . written contract . . . or his rights, status, or other legal relations are affected by a . . . contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status, or other legal relations thereunder." Ark. Code Ann. § 16-111-104 (Repl. 1987).

*Stilley v. James*, 345 Ark. 362, 372, 48 S.W.3d 521, 528 (2001). Further, a declaratory judgment action is to be liberally construed in resolving uncertainty in rights, status, and legal relations. *Wilmans v. Sears, Roebuck and Co.*, 355 Ark. 668, 144 S.W.3d 245 (2004). The circuit court properly decided the issue of the meaning of the term "prisoners of municipalities" in a declaratory judgment action, and the court should review that decision on appeal.