COURTNEY HUDSON GOODSON, Associate Justice
Appellant Mississippi County, Arkansas ("the County"), appeals from the Mississippi County Circuit Court's order granting appellee City of Blytheville's ("the City") motion for summary judgment.[1] For reversal, the County argues that the circuit court erred (1) by defining the phrase "prisoners of municipalities," for whom the City would owe a daily fee for housing in the County jail pursuant to Arkansas Code Annotated section 12-41-506 (Repl. 2016), as only those detainees charged with violation of a city ordinance; and (2) by applying an offset in the amount of taxes paid under an exclusive jail tax by residents of the City to the calculation of "reasonable expenses" under section 12-41-506. We reverse and remand.
The statute at issue in this appeal, Arkansas Code Annotated section 12-41-506, which is entitled "Municipal Prisoners-Expenses," provides as follows:
(a)(1) In the absence of an agreement on jail costs between a county and all municipalities having law enforcement agencies in the county, the quorum court in a county in this state may by ordinance establish a daily fee to be charged municipalities for keeping prisoners of municipalities in the county jail.
(2) The fee shall be based upon the reasonable expenses which the county incurs in keeping such prisoners in the county jail.
(b)(1) Municipalities whose prisoners are maintained in the county jail shall be responsible for paying the fee established by the quorum court in the county.
(2) When a person is sentenced to a county jail for violating a municipal ordinance, the municipality shall be responsible for paying the fee established by an agreement or ordinance of the quorum court in the county.
(3) Municipalities may appropriate funds to assist the county in the maintenance and operation of the county jail.
(c)(1) Each county sheriff shall bill each municipality monthly for the cost of keeping prisoners in the county jail.
(2) Each county sheriff shall remit to the county treasurer monthly the fees collected under this section, and such fees shall be credited to the county general fund.
(d) Counties shall give priority to in-county municipalities over contracts for out-of-county prisoners.
A brief overview of the relevant history between the parties regarding the payment of jail fees for municipal prisoners pursuant to this statute is necessary to understand the issues presented. In 2001, the Mississippi County Quorum Court enacted ordinance number 0-2001-18, "An Ordinance Establishing Fees for Municipal Prisoners Held in the Mississippi County Jail and For Other Purposes." The Ordinance became effective on February 1, 2002, and stated that, in the absence of a *826 written agreement with a municipality for an appropriation of funds to assist the County in the maintenance and operation of the County jail, a fee of $35 per prisoner shall be charged for any prisoner arrested by any state or municipal law enforcement officer within the geographic boundaries of any city or incorporated town in the County for a violation of any state law or municipal ordinance and presented to the County jail for incarceration. In 2008, Ordinance number 0-2008-13 was passed, increasing the daily fee for municipal prisoners to $55 per day, effective January 1, 2009.
Prior to 2003, the City of Blytheville operated its own municipal jail. After that jail closed in January 2003, the County brought a declaratory-judgment action against the cities of Blytheville, Dell, Gosnell, and Manila seeking to have the circuit court define the term, "prisoners of municipalities," as found in section 12-41-506(a)(1). An order was entered in December 2003 granting the County's petition to define the term to "include persons housed in the county jail by virtue of a pending misdemeanor charge that is pending on a city docket or municipal docket of any court, whereby the fine revenue that would be owed by the prisoner, if convicted, would be paid to the city or the municipality and not to the county." The City of Blytheville dismissed its appeal of this order following the entry of a consent order in a collection action filed by the County against the City for unpaid jail fees. This consent order, which was filed on August 26, 2004, indicated that the parties had agreed to a daily rate of $15 per day for each municipal prisoner, as defined in the 2003 declaratory-judgment action, for a total of $44,805 for the months of November 2003 through June 2004. The order further stated that the parties would renegotiate future daily jail fees in September of each year following the expiration of the current agreement on December 31, 2005.
Subsequent written agreements between the City and the County raised the daily rate for the City's municipal prisoners to $20 for 2006; $30 for 2007-2008; $40 for 2009-2010; $45 for 2011; and $50 for 2012. There were no further written agreements between these parties regarding jail fees after 2012.
In January 2014, the County filed a complaint against the City, alleging that it had not paid a daily fee for its municipal prisoners since January 2013. The County sought judgment for these fees from February 2013 through December 2013, at either the $50 rate previously agreed to by the parties for a total of $275,350, or the $55 rate required by the 2008 Ordinance for a total of $305,090, in addition to amounts for subsequent months and prejudgment interest.
The City filed an answer and a counterclaim in February 2014. The City denied that any prior orders or agreements between the parties defining the term "municipal prisoners" were controlling; instead, the City argued that the prior orders were void or voidable because all necessary or interested parties were not joined. In its counterclaim, the City sought a declaratory judgment that "prisoners of municipalities" and "municipal prisoner" as referenced in section 12-41-506 means "a person arrested and jailed by a municipal officer on a municipal ordinance violation." In addition, the City requested an injunction preventing the County from charging it for the incarceration of persons other than municipal prisoners as defined above. The County answered the counterclaim and affirmatively argued that the City's claims were barred by res judicata and collateral estoppel.
*827 On April 4, 2014, the City filed a motion to join the cities of Dell, Manila, and Leachville, all of whom it alleged had utilized the County jail.[2] The motion was granted by the circuit court, and an amended counterclaim was filed on April 24, 2014, adding these cities as involuntary counterplaintiffs.
The City filed a motion for summary judgment on July 7, 2014. In its motion, the City argued that Arkansas Code Annotated section 12-41-506 defines "prisoners of municipalities" in a way that is inconsistent with the County's application of the definition; that the County had also charged the City in excess of its actual costs for housing municipal prisoners in violation of Arkansas Code Annotated section 12-41-503(d) - (f) ; and that the County's actions in charging varying amounts of jail fees to different entities violated the equal-protection clause of the Arkansas Constitution.
The County filed a cross-motion for summary judgment, asserting that the City was barred by res judicata and collateral estoppel from relitigating the previous definition of "prisoners of municipalities," at least as it relates to misdemeanor prisoners, that was memorialized in the 2003 lawsuit and the 2004 consent order involving both parties. The County also argued that, consistent with this prior definition, with the Attorney General's interpretation of the term, and with the payment of jail fees by other cities in the County, the City should be required to pay, prospectively, jail fees for all prisoners that the City arrests and delivers to the County jail for incarceration from the point of arrest or intake until (1) charging on a felony, (2) sentencing on a misdemeanor, and (3) release on a municipal-ordinance violation. In addition, the County contended that the City had presented no proof to show that the $55 daily fee set by the quorum court was not based on "reasonable expenses" as required by Arkansas Code Annotated section 12-41-506(a)(2). The County attached numerous exhibits to its motion, including an affidavit from the Mississippi County Sheriff that indicated that all cities in the County, with the exception of Blytheville subsequent to February 2013, had paid jail fees in accordance with the County's proposed definition of municipal prisoners. The County also attached a listing, by county, of the State Inmate Cost Per Day reported by the Association of Arkansas Counties and verified by the Division of Legislative Audit. This report indicated that Mississippi County had a verified cost per day for each inmate of $78.67.
In its reply to the County's response, the City continued to argue that there was no rational basis for the disparate treatment between the municipalities in the County and the State, which pays only $28 per day for its prisoners housed in the County jail. The City contended that even if the fees charged by the County's ordinance did not violate the equal-protection clause, the formula for calculating jail fees was unreasonable. The City claimed that by dividing the total jail costs by the number of prisoners, the cities were unfairly required to pay a greater share of prisoner medical costs than the municipal prisoners actually incurred because they spend less overall time in the jail. While the City admitted that there were numerous Attorney General opinions that had attempted to define "prisoners of municipalities," it argued that these opinions were nonbinding precedent and were based on a misreading of the statute. The City requested a declaratory judgment stating that a municipal prisoner is "merely one arrested on *828 a municipal ordinance violation." With regard to the County's res judicata and collateral estoppel argument, the City claimed that the prior declaratory-judgment action and consent judgment were not binding because the County had failed to join the city of Leachville as a party. The City further argued that, even if res judicata and collateral estoppel applied, the facts presented in this case clearly fell under the public-interest exception to the doctrine.
The City of Leachville adopted the City's motion for summary judgment, and a summary-judgment hearing was held on November 23, 2015. The circuit court asked for posthearing briefs on the proper interpretation of the term "prisoners of municipalities," and each party submitted supplemental briefs and responses.
The circuit court entered an order on January 25, 2016, and an amended order on February 1, 2016, finding that the doctrines of res judicata and collateral estoppel did not apply and that even if they did, "there was a clear and convincing need for a new determination of the issue because of the potential adverse impact of the determination on the public interest." The court noted that the outcome of the case could have an effect on counties and cities all over Arkansas. With regard to the interpretation of the phrase "prisoners of municipalities" as found in Arkansas Code Annotated section 12-41-506, the circuit court found that this language was ambiguous. Although it determined that the legislature's intent with respect to the statutory language was unclear, the court concluded that it agreed with the City's proposed definition. The court therefore found that "prisoners of municipalities" are "those persons arrested and jailed for violations of city ordinances." The circuit court granted the City's motion for summary judgment in part but found that an issue of fact remained as to what should be considered in determining the reasonable expenses of the County in housing municipal prisoners.
After further discovery, the City filed a second motion for summary judgment on June 20, 2016. The City contended that, under the circuit court's definition of municipal prisoners, the County had housed only one of the City's prisoners within the three years preceding the lawsuit and that this municipal prisoner had stayed in the County jail for only two days, for a total of $110 in jail fees. The City further asserted that county "jail taxes" were passed in both 1995 and 1998 and that the purpose of these taxes was to assist the County in the operation and maintenance of the County jail.[3] According to the City, the revenue from these sales taxes exceeded what it, or any other municipality in the County, owed in jail fees. Consequently, the City argued that the amount it paid in sales taxes should offset what it owed to the County in fees and that the County should be enjoined from billing any city in the County for municipal jail fees due to this setoff.
The County filed a second cross-motion for summary judgment, arguing that its jail fee was based on reasonable expenses in housing prisoners and attaching a spreadsheet listing the County's jail expenses and revenue for 2012 through 2015.
*829 An affidavit from the office manager for the Mississippi County Sheriff was also attached, along with reports indicating that the cost for inmates in that county from 2012 to 2015 exceeded $55 per day. With regard to the City's setoff argument, the County asserted that the City did not have standing to raise that issue or to take credit for sales taxes paid by third parties. Furthermore, the County argued that even if the City did have standing, there was no authority to support the City's offset theory and that allowing an offset in this case would open the "proverbial floodgates" to attacks on every fee charged by public entities that are funded primarily by tax revenue, such as libraries.
After further responses by each party, the circuit court entered a final order on February 17, 2017, granting in part and denying in part each party's cross-motion for summary judgment. The court ruled that the County's method for calculating the jail fees was reasonable and appropriate. However, the court found that the County must deduct the revenue received from the cities' residents from the 1995 "exclusive" jail tax, but not the 1998 "non-exclusive" jail tax, before calculating the reasonable expenses for holding the cities' prisoners. The circuit court rejected the City's equal-protection argument. The County filed a timely notice of appeal from the circuit court's order.
In its first point on appeal, the County argues that the circuit court erred by defining "prisoners of municipalities" as only those detainees who are charged with violating a municipal ordinance. The County asserts that this interpretation is contrary to the language and intent of Arkansas Code Annotated section 12-41-506, that it is inconsistent with all previous authority interpreting this language, and that it is barred by the doctrines of res judicata and collateral estoppel.
Ordinarily, on appeal from a summary-judgment disposition, we view the evidence in the light most favorable to the party resisting the motion, and any doubts and inferences are resolved against the moving party. Abraham v. Beck , 2015 Ark. 80, 456 S.W.3d 744. However, when the parties agree on the facts, we simply determine whether the appellee was entitled to judgment as a matter of law. Id. When parties file cross-motions for summary judgment, as in this case, they essentially agree that there are no material facts remaining and that summary judgment is an appropriate means of resolving the case. Id. As to issues of law presented, our review is de novo. Id.
We first address the County's contention that the circuit court's definition of the term "prisoners of municipalities" is contrary to the circuit court's prior interpretation in the 2003 declaratory-judgment action, as well as the definition incorporated into the parties' 2004 consent order, and that it is therefore barred by res judicata and collateral estoppel. We have held that the concept of res judicata has two facets, one being issue preclusion and the other being claim preclusion. Abraham , supra. Collateral estoppel, also known as issue preclusion, bars relitigation of issues of law or fact that were previously litigated by a party. Id. The following elements are required for collateral estoppel to apply: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) the issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment. Id.
The City argued below, and continues to assert on appeal, that the definition of "prisoners of municipalities" in the 2003 *830 declaratory-judgment action and the 2004 consent order does not bind the parties in the current litigation because the City of Leachville, which also uses the County jail, was not a party to the prior actions. As the City contends, when declaratory relief is sought, "all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." Ark. Code Ann. § 16-111-111(a) (Supp. 2017). See also Files v. Hill , 268 Ark. 106, 594 S.W.2d 836 (1980) (the failure to include in an action a party whose interest would be affected by the proceeding is fatal to a declaratory-judgment action). In addition, while collateral estoppel may be asserted by a stranger to the first judgment or order, it is applicable only when the party against whom the earlier decision is being asserted had a full and fair opportunity to litigate the issue in question in the earlier proceeding. Vibo Corp., Inc. v. McDaniel , 2011 Ark. 124, 380 S.W.3d 411 ; Powell v. Lane , 375 Ark. 178, 289 S.W.3d 440 (2008). The County has not demonstrated that Leachville had notice of or a full and fair opportunity to litigate the definition of "prisoners of municipalities" in the 2003 declaratory-judgment action. Thus, at a minimum, we agree with the City that this prior interpretation is not binding as to Leachville.
The circuit court further found that, even if the elements of res judicata or collateral estoppel had been met, the parties to this proceeding would not be barred from relitigating the meaning of the phrase because of the potential adverse impact on the public interest. While this court has not previously recognized a "public interest" exception to the doctrine of res judicata, other courts have done so. In Van Curen v. Arkansas Professional Bail Bondsman Licensing Board , 79 Ark. App. 43, 84 S.W.3d 47 (2002), our court of appeals held that an exception to res judicata exists when the public's interest in reaching the right result weighs against its application. See also Am. Jur. 2d Judgments § 469 (2018) (even where the threshold elements for application of the defense are met, a court should not apply the doctrine in circumstances where its purpose would not be served or where the public interest requires that relitigation not be foreclosed). Also, in Myers v. State Board of Equalization , 240 Cal.App.4th 722, 192 Cal.Rptr.3d 864 (2015), the court declined to apply res judicata because the issue concerned a pure question of law that affected the public interest. Similarly, here, the interpretation of the statutory term "prisoners of municipalities" is a question of law that affects cities and counties across the state, as well as their citizens. We therefore agree with the circuit court that the public-interest exception applies under the circumstances in this case and that the municipalities involved in the prior litigation are not barred from relitigating the issue.
We next address whether the circuit court erred in its interpretation of the phrase "prisoners of municipalities" as used in Arkansas Code Annotated section 12-41-506. We review issues of statutory interpretation de novo, as it is for this court to determine what a statute means. DeSoto Gathering Co. LLC v. Hill , 2017 Ark. 326, 531 S.W.3d 396. The primary rule of statutory interpretation is to give effect to the intent of the legislature. Keep Our Dollars in Independence Cty. v. Mitchell , 2017 Ark. 154, 518 S.W.3d 64. We construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. Id. Where the language is plain and unambiguous, this court determines legislative intent from the ordinary meaning of the *831 language used. Valley v. Pulaski Cty. Cir. Ct., Third Div. , 2014 Ark. 112, 431 S.W.3d 916. Statutory language is ambiguous if it is open to more than one construction. Id. When a statute is ambiguous, this court must interpret it according to legislative intent, and our review becomes an examination of the whole act. Id. In addition, we must look at the legislative history, the language, and the subject matter involved. Id. The circuit court was correct in finding that the meaning of the phrase "prisoners of municipalities" as found in section 12-41-506 is not defined in the statute and is ambiguous. However, we disagree with the circuit court's conclusion that the legislature intended for only those detainees who are charged with, or convicted of, violating a municipal ordinance to be included within that term. While this court has not had an occasion to interpret this statutory language,[4] the Attorney General has addressed the meaning of this phrase on multiple occasions and, since at least 1982, has consistently defined "prisoners of municipalities" to include those persons who are arrested by city police for violation of a municipal ordinance or Arkansas statutory law. See Op. Ark. Att'y Gen. No. 2009-043; Op. Ark. Att'y Gen. No. 2004-303; Op. Ark. Att'y Gen. No. 97-299; Op. Ark. Att'y Gen. No. 97-006; Op. Ark. Att'y Gen. No. 96-249; Op. Ark. Att'y Gen. No. 91-409; Op. Ark. Att'y Gen. No. 91-040; Op. Ark. Att'y Gen. No. 84-154; Op. Ark. Att'y Gen. No. 82-104. Furthermore, for those prisoners who are arrested by city police for a violation of Arkansas statutory law, the Attorney General has opined that they remain municipal prisoners until either felony charges are filed against them or they are convicted and sentenced on a misdemeanor offense. See, e.g. , Op. Ark. Att'y Gen. No. 2009-043 (disagreeing with change in interpretation set forth in Op. Ark. Att'y Gen. 2001-359 and returning to its traditional definition of a municipal prisoner as including those who are arrested by a city officer on felony charges until such time as the prisoner is formally charged); Op. Ark. Att'y Gen. No. 97-299; Op. Ark. Att'y Gen. No. 91-409. Municipal prisoners who are convicted and sentenced to the County jail for a violation of a municipal ordinance continue to be the responsibility of the City pursuant to the plain language of Arkansas Code Annotated section 12-41-506(b)(2).
The Attorney General has explained that section 12-41-506 was an attempt by the legislature to recognize that a county's reception and retention of city prisoners benefits those municipalities holding its prisoners within a county jail. Op. Ark. Att'y Gen. No. 84-154. In addition to prosecuting municipal violations, city attorneys also have the authority to prosecute misdemeanor violations of state law that occur within a city's limits and to collect the resulting fine revenue, while they have no authority to file felony charges. See Archer v. Benton Cty. Cir. Ct. , 316 Ark. 477, 872 S.W.2d 397 (1994) ; Ark. Code Ann. § 16-21-115 (Repl. 2016); Ark. Code Ann. § 16-21-150 ; Op. Att'y Gen. No. 2004-303; Op. Att'y Gen. No. 95-235; Op. Att'y Gen. No. 91-409. Instead, it is counties that principally bear the cost of felony prosecutions, and the Attorney General has asserted that the counties should therefore assume responsibility for the cost of imprisonment once felony charges are filed. Ark. Code Ann. § 16-92-109 ; Op. Att'y Gen. No. 91-409.
While Attorney General opinions are not binding authority on this court, *832 White Cty. v. Cities of Judsonia, Kensett & Pangburn , 369 Ark. 151, 251 S.W.3d 275 (2007), we find that the Attorney General's interpretation of the term "prisoners of municipalities" is persuasive. Furthermore, it is significant that there has been no legislative clarification or amendment of this statutory language following the many Attorney General opinions over the last thirty-five years that have interpreted this phrase in a consistent manner. See Op. Ark. Att'y Gen. No. 2009-043; Op. Ark. Att'y Gen. No. 2004-303; see also Jackson v. Blytheville Civ. Serv. Comm'n , 345 Ark. 56, 43 S.W.3d 748 (2001) (noting in interpreting statute that there had been no legislative clarification following an Attorney General's opinion on the issue). Accordingly, we agree with the County that the term "prisoners of municipalities" as used in section 12-41-506 includes those offenders who are arrested by municipal law enforcement officers and delivered to the county jail for incarceration, from the point of intake until (a) charging on a felony offense; (b) sentencing on a misdemeanor offense; and (c) release on a municipal-ordinance violation. We therefore reverse the circuit court's order granting summary judgment to the City on this issue.
In the County's second point on appeal, it argues that the circuit court erred by applying an offset in the amount of taxes paid under the 1995 "exclusive" jail tax by residents of the City to the calculation of "reasonable expenses" under Arkansas Code Annotated section 12-41-506(a)(2). The County contends that the City does not have standing to take credit for payments made by third parties that are not part of this litigation. Alternatively, even if the City does have standing to raise this issue, the County asserts that there is no statutory authority to support such an offset.
We first address the issue of standing, as this is a threshold question. Landers v. Stone , 2016 Ark. 272, 496 S.W.3d 370. We have held that only a claimant who has a personal stake in the outcome of a controversy has standing. Nelson v. Ark. Rural Med. Practice Loan & Scholarship Bd. , 2011 Ark. 491, 385 S.W.3d 762 ; Pulaski Cty. v. Ark. Democrat-Gazette , 371 Ark. 217, 264 S.W.3d 465 (2007). The question of standing is a matter of law for this court to decide. Nelson , supra.
The City requested that the circuit court offset any municipal prisoner fees that the City owed to the County by the amount of sales taxes paid by Blytheville citizens pursuant to the jail tax. However, the City has not alleged or demonstrated that it has been injured by paying the jail tax, and no entities or persons who have paid this sales tax, such as the citizens of Blytheville, were joined in this suit. Thus, we agree with the County that the City lacks standing to raise this issue. The circuit court's finding that the City can be given credit for a countywide jail tax paid by its residents, who are also residents of the County itself, is illogical and is not authorized by the provisions in section 12-41-506. Accordingly, we reverse the circuit court's order granting a setoff of any prisoner fees owed by the City to the County, and we remand for further proceedings.
Reversed and remanded.
Hart, J., concurs in part and dissents in part.
I concur in the disposition of Mississippi County's (the County) second point regarding the circuit court's finding that Blytheville was entitled to a setoff in the amount paid by Blytheville residents under *833 the "exclusive jail tax," the 1995 tax that supports only the county jail. However, I disagree that the issue should be disposed of on the standing issue. Blytheville's obligation to pay for "municipal prisoners" is not speculative or academic-it exists pursuant to the dictates of Arkansas Code Annotated section 12-41-506.
That the circuit court erred in awarding Blytheville a setoff. The plain language of section 12-41-506 states:
(2) When a person is sentenced to a county jail for violating a municipal ordinance, the municipality shall be responsible for paying the fee established by an agreement or ordinance of the quorum court in the county.
Ark. Code Ann. § 12-41-506(a)(2) (Repl. 2016). In accordance with section 12-41-506(a), the County's quorum court passed an ordinance setting the per diem rate for housing municipal prisoners. The plain wording of the statute is conclusive on this issue. Accordingly, I concur that the circuit court should be reversed on this point.
I disagree with the disposition of the County's first point. I first note that I am persuaded by and endorse the majority's very thorough treatment of the County's res judicata/collateral estoppel argument. This rationale obviates the majority's subsequent dicta in which it purports to recognize the "public-interest exception" to res judicata.
I do not agree with the balance of the majority's analysis of this argument, however. In my view, the circuit court's construction of section 12-41-506 is eminently correct. The circuit court found that "prisoners of municipalities" meant "those persons arrested and jailed for violations of city ordinances." This definition is firmly grounded in the plain language of section 12-41-506, and it does not add the words that the County requests. Conversely, the definition espoused by the County is:
[A]ll prisoners charged on the City docket and delivered to the county jail for incarceration, from the point of arrest/intake (a) until charging on a felony, (b) until sentencing on a misdemeanor, and until release on a municipal ordinance violation.
The statute's only reference to who might be a "municipal prisoner" is found in section 12-41-506 (b)(1)(2), which states, "When a person is sentenced to a county jail for violating a municipal ordinance, the municipality shall be responsible for paying the fee established by an agreement or ordinance of the quorum court in the county." This "fee" is the same fee that is referenced in section 12-41-506(a). However, noticeably absent from section 12-41-506 is any mention of "City docket," "charging," "felonies," "misdemeanors," and "arrests/intake." Accordingly, essentially adopting the County's proposed definition of "municipal prisoner" is nothing more than legislating from the bench. If the General Assembly had intended "municipal prisoner" to be defined in this way, it could easily have adopted this language.
Finally, the majority's reliance on attorney general opinions is troublesome. It indicates a misunderstanding of the nature of these opinions. Attorney general opinions are not judicial opinions. Attorney general opinions are merely legal advice given in response to particular questions submitted by a state government official. They can be tainted by political bias. Furthermore, they are not tempered in the crucible of judicial review. I think it is likely that the apparent similarity in the opinions may be explained as a product of long-serving staff rather than legal analysis performed seriatim. Accordingly, I do not find those opinions to be persuasive. In short, repeating faulty analysis several time does not make it correct.
*834 For the foregoing reasons, I would affirm the circuit court in part and reverse it in part. Accordingly, I concur in part and dissent in part.

The Cities of Dell, Manila, and Leachville were also joined by the City of Blytheville as involuntary counterplaintiffs and are named in the County's notice of appeal.

The parties agreed that the city of Gosnell had not housed any of its municipal prisoners in the County jail during the relevant time period.

The 1995 Mississippi County ordinance, referred to as the "exclusive" jail tax by the circuit court, provided for a one-fourth of 1 percent tax on gross receipts from retail sales to be collected "for the purpose of constructing, operating and maintaining jail facilities" in the County. The 1998 tax, which was referred to by the court as the "non-exclusive" jail tax, provided for a one-fourth of 1 percent sales tax, with one half of the revenue to go to library facilities and the other half to go to "the operation and maintenance of court facilities, jails, juvenile facilities, sheriff's stations, apparatus, and facilities."

In City of Pine Bluff v. Jones , 370 Ark. 173, 258 S.W.3d 361 (2007), this precise issue was presented; however, we held that the declaratory-judgment action was moot in light of the parties' settlement agreement, and we did not address the merits of the case.