Cite as 2025 Ark. App. 157

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-23-557

|  |  |
|---|---|
| | **Opinion Delivered** March 12, 2025 |
| CITY OF PINE BLUFF<br>APPELLANT | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. 35CV-21-138] |
| V. | |
| JEFFERSON COUNTY, PINE BLUFF, ARKANSAS; GERALD ROBINSON, IN HIS OFFICIAL CAPACITY AS JEFFERSON COUNTY JUDGE; LAFAYETTE WOODS, JR., IN HIS OFFICIAL CAPACITY AS JEFFERSON COUNTY SHERIFF; JUSTICE ALFRED CARROLL, SR., IN HIS OFFICIAL CAPACITY; JUSTICE REGINALD ADAMS, IN HIS OFFICIAL CAPACITY; JUSTICE REGINALD JOHNSON, IN HIS OFFICIAL CAPACITY; JUSTICE PATRICIA ROYAL JOHNSON, IN HER OFFICIAL CAPACITY; JUSTICE JIMMIE LEE FISHER, SR., IN HIS OFFICIAL CAPACITY; JUSTICE GLENDA DANIELS, IN HER OFFICIAL CAPACITY; JUSTICE MELANIE JOHNSON DUMAS, IN HER OFFICIAL CAPACITY; JUSTICE ROY AGEE, IN HIS OFFICIAL CAPACITY; JUSTICE CEDRIC JACKSON, IN HIS OFFICIAL CAPACITY; JUSTICE CONLEY F. BYRD, JR., IN HIS OFFICIAL CAPACITY; JUSTICE DANNY HOLCOMB, IN HIS OFFICIAL CAPACITY; JUSTICE TED HARDEN, IN HIS OFFICIAL CAPACITY; AND JUSTICE BRENDA BISHOP GADDY, IN HER OFFICIAL CAPACITY<br>APPELLEES | HONORABLE DAVID N. LASER, SPECIAL JUDGE<br><br>AFFIRMED |

**BRANDON J. HARRISON, Judge**

The City of Pine Bluff (the City) appeals the Jefferson County Circuit Court order that dismissed its complaint for declaratory judgment and granted Jefferson County's (the County's) motion for summary judgment. We affirm the circuit court's order.

Our supreme court explained the underlying facts of this case in *City of Pine Bluff v. Jones*, 370 Ark. 173, 173–74, 258 S.W.3d 361, 362 (2007).

> The lawsuit at issue in this case stemmed from an October 1993 contract between the County and the City. Under the terms of that contract, the County was to build a thirty-two bed expansion at the Jefferson County Jail, and the City agreed to lease from the County twenty-four of those beds, which were to "be available to the City, at all times." In exchange for the beds, the City agreed to pay the County $24,090 per month over the twenty-year term of the lease. The County pledged the money received from the City under the lease to retire the construction debt on the jail expansion. In March of 2004, however, the City ceased making its monthly payments.
>
> On October 29, 2004, the County filed suit against the City and its city officials, alleging that the City had breached its contract with the County. The City responded by filing a counterclaim and requesting a declaratory judgment on May 20, 2005. The City claimed that the County had breached the parties' contract by charging the City for prisoners who were "prisoners of Jefferson County for whom the city had no financial responsibility." In addition, the City alleged that the County had not been permitting the City access to all of the twenty-four beds the City was guaranteed under the contract.

The parties ultimately resolved the dispute in a "Release and Settlement Agreement" (the Agreement). Under its terms, the City was to begin its payments in March 2006 for the allotted twenty-four beds in the Jefferson County Detention Center (JCDC) under the terms of the 1993 contract. The City also agreed to begin paying $8,000 a month to the Jack Jones Juvenile Justice Center (JJJC) for the housing of Pine Bluff juvenile detainees in that facility. After paying the December 2006 invoices for both the JCDC and the JJJC, all

2

monthly invoices would cease, and the County and the City would make a new agreement for the future housing of Pine Bluff detainees in both facilities.

As further consideration for the parties' settlement, the City agreed to pay the County $75,000. The parties agreed that the City owed Jefferson County $565,000 for past jail invoices left unpaid and that the City would pay that amount over two years at $23,541.66 a month beginning in January 2007.

The parties also agreed that when the new county jail opened following its construction, the City could use of seventy-five beds to house "City misdemeanor arrestees and convictees, City ordinance arrestees and convictees, and City misdemeanor warrant arrestees and convictees." In addition to those seventy-five beds, the City would have priority to use the approximately thirty beds that had been allocated for use by other cities within Jefferson County and the University of Arkansas at Pine Bluff if those entities were not then using those beds. At any time the City was not using the seventy-five beds allotted to it in the new county jail, the County was free to use them; but if the County had placed its detainees in those beds, then the County would be responsible for accepting any City detainees and accepting financial responsibility for housing those detainees in the county jail or transporting the detainees to another facility.

The Agreement also provided that representatives of the County and the City "will meet after passage of twelve months from the date of the opening of the new county jail to determine whether the bed space as between the parties noted above, is adequate for the needs of the City and manageable for the County." And the Agreement provided that "a

3

daily fee for detainee housing shall be agreed upon as soon as reasonably practical upon the

opening of the new County jail in the event that the City is using more beds than allotted[.]"

Finally, the parties also agreed to allow the City to appeal the definition of "prisoners

of municipalities" as adjudged by the circuit court because a definition was needed to

determine the rights of the parties for bed space, jail use, and an assessed daily fee over and

above the allotment and cost distribution outlined in the Agreement.  The parties recognized

the need for the supreme court to interpret the definition of municipal prisoner as used in

Ark. Code Ann. § 12-41-506 (Repl. 2016) before they could complete the Agreement.

The City appealed to the Arkansas Supreme Court, which issued its opinion on 7

June 2007.  The supreme court failed to reach the merits of the City's arguments on appeal,

however, holding that the issue before the court was moot since the parties had settled their

financial disputes pursuant to the Agreement.  *See City of Pine Bluff*, 370 Ark. at 177–78,

258 S.W.3d at 365 ("It is apparent that any opinion we might render would have no effect

on the settlement agreement negotiated between the parties.").  Relevant to this appeal, the

supreme court noted,

> [C]ounsel for the City of Pine Bluff urged that this settlement only covered "portions of the case," suggesting that the parties will still have to "go back to the negotiation table to determine additional bed space and the cost." Counsel further stated that there were "continuing negotiations . . . for a short gap of time between January of [2007] and when the jail opened in the spring of [2007]" and that the parties had to "go back and negotiate additional bed space within a year of the jail opening."
>
> Counsel for Jefferson County, however, informed the court that any decision we might render would "not affect the settlement agreement in this pending case," but would only "affect future negotiations between Jefferson County and the City of Pine Bluff." When asked whether an opinion from this court setting out a definition different from that of the trial court would change anything in the settlement agreement, the County's counsel replied

4

that it would not, nor would it change any of the monetary calculations in the settlement agreement. Although the County's attorney noted that the parties will have to meet again within one year of the opening of the new jail to determine whether the bed-space allocation was functioning effectively, he agreed that the "settlement agreement [would] stand" no matter what this court does. *On rebuttal, the attorney for the City of Pine Bluff agreed that the monetary portions of the settlement would be unaffected by any decision of this court, and he conceded that everything in the contract would have to be renegotiated after a year.*

*Id.* at 177, 258 S.W.3d at 365 (emphasis added).

After the supreme court's opinion issued, the parties did not renegotiate the City's monthly jail fees or enter into a new agreement for the future housing of the City's detainees in both facilities. Consequently, the City has paid nothing for housing its detainees since its final payments under the Agreement in December 2008.

On 14 December 2020, the Jefferson County Quorum Court passed Ordinance No. 2020-154, which authorizes the county judge to impose a charge of $30 a day for each inmate received from any city accepted and kept by Jefferson County.

In March 2021, the City filed a complaint for declaratory judgment against Jefferson County; Gerald Robinson, the Jefferson County judge; Lafayette Woods, the Jefferson County sheriff; and thirteen justices on the Jefferson County Quorum Court.[1] The City asserted that the ordinance was in direct contravention of the Agreement still in place, which can only be modified in writing. The City asked the court to "construe and declare the rights and duties of [the City], and the obligations and liabilities of [the County], pursuant to the Release and Settlement Agreement enter[ed] by the parties." The County counterclaimed for $191,210 in unpaid monthly bills issued pursuant to the ordinance.

---

[1]The defendants will be referred to collectively as "the County."

In May 2022, the County moved for summary judgment arguing that (1) the ordinance is valid and controls over the Agreement between the parties based on the County's police power, its obligation to house persons arrested in that county, and its right to charge reasonable rates for providing the detention facility services; and (2) the Agreement was not meant to last any longer than necessary following the anticipated Arkansas Supreme Court ruling on the definition of prisoners of municipalities; moreover, the Agreement contained no terms of duration, so it was terminable by either party at will.

The City also moved for summary judgment, asserting that the County is prohibited from imposing jail costs given the parties' Agreement. Specifically, the City contended that pursuant to the Agreement, fees imposed by the County are limited to city arrestees or convictees in excess of the seventy-five beds allocated to the City, plus first priority on any of the additional thirty unused beds allocated for other cities in Jefferson County and the University of Arkansas Pine Bluff.

The court held a hearing on 6 July 2022 at which it heard arguments from counsel and asked each side to prepare proposed findings of fact and conclusions of law. A second hearing was held on 20 March 2023, and after further discussion with counsel, the court ruled that the County was entitled to prevail as a matter of law and the City's motion for summary judgment was denied. The court found that there was no Agreement existing between the City and the County when the ordinance was passed and that the ordinance is proper and applies to this particular case.

The court's written order made the following findings:

11. At the time of the settlement agreement, Pine Bluff and Jefferson County intended to settle the back pay issues and renegotiate a new rate going

6

forward after the Arkansas Supreme Court rendered its opinion as to the definition of "prisoners of municipalities" as that term is used in A.C.A. § 12-41-506.

12. At no time since the Arkansas Supreme Court opinion, declining to define "prisoners in municipalities[,]" were Pine Bluff and Jefferson County able to renegotiate the Pine Bluff monthly jail fees. As a result, Pine Bluff has paid nothing for housing its detainees since its final payments under the Settlement Agreement in December 2008. Thus, despite the paragraph 1(c) of the Settlement Agreement, which stated that Pine Bluff and Jefferson County would enter into a new agreement for the future housing of Pine Bluff detainees in both facilities as set forth below, they did not.

13. Jefferson County Quorum Court passed Ordinance No. 2020-154 on December 14, 2020 due to the continued failure of Pine Bluff to pay for incarceration of city prisoners.

14. The Settlement Agreement is clear that the money paid by Pine Bluff is for arrearages and that the 1993 contract would cease at year-end 2008, at which time Pine Bluff and Jefferson County would renegotiate the jail fees going forward. They never did.

## B. CONCLUSIONS OF LAW

1. A.C.A. § 12-41-506(a)(l) never applied to the parties in this case since it requires any interlocal agreement for jail fees to be agreed upon by all cities in the county. Pine Bluff never agreed to any jail fee agreement as a city except in 1993 (the 20-year contract) and the Settlement Agreement in 2006, which only provided for arrearages to be paid for unpaid jail fees from 2004 until the March 2006 Agreement.

2. A.C.A. § 12-41-506 provides specifically that:

(a)(1) in the absence of an agreement on jail costs between a county and all municipalities having law enforcement agencies in the county, the Quorum Court in this state may by ordinance establish a daily fee to be charged to municipalities for keeping prisoners of municipalities in the county jail.

(2) the fee shall be based upon the reasonable expenses which the county incurs in keeping such prisoners in the county jail.

3. County government cannot contract away its duty to perform essential governmental functions. *Camden v. A P& L,* 145 Ark. 205, 2010; 224 S.W. 444 (1920).

4. Any contract with a regulatory body must be made in full recognition of and subject to the sovereign power as much as if such a reservation were written into the body of the contract. *Camden Gas Corp. v. City of Camden*, I84 Ark. 34, 37, 41 S.W.2d 979, 980 (1930).

5. It is clear that a county may not contract away its power and obligation to charge reasonable rates for municipal services. *Skallerup v. City of Hot Springs*, 2009 Ark. 276, 309 S.W.3d 1996, 203 (Ark. 2009).

. . . .

7. Jefferson County Ordinance No. 2020-154 is valid and controls over the Settlement Agreement between the same parties as part of the resolution of 35CV-04-844.

8. It is clear that the Settlement Agreement in 35CV-04-844 between these same parties settled past due jail fees owed by Pine Bluff to Jefferson County and did not bind either party beyond the deadlines stated therein.

9. The Settlement Agreement provided for in 35CV-04-844 is uncertain as to time of termination and as such, it is terminable by either party at will. Sk*allerup v. City of Hot Springs*; also, *Delany v. Rucker*, 277 Ark. 869, 874, 302 S.W.2d 287, 290 (1957). Judgment should be granted in favor of Jefferson County upon its counterclaim for declaratory relief and damages. Jefferson County is entitled to damages in the amount of $402,704.00 for invoices tendered to Pine Bluff by Jefferson County from January 2021 through March 2023.

10. The Court declares that Pine Bluff pay all subsequent monthly invoices tendered [to] it by Jefferson County for confinement of its arrestees as long as Ordinance 2020-154 remains in effect.

The court also denied and dismissed the City's complaint for declaratory judgment. The City filed a timely notice of appeal from this order.

When a party appeals a grant of summary judgment, we ordinarily examine the record to determine if genuine issues of material fact exist. *May v. Akers-Lang*, 2012 Ark.

8

7, 386 S.W.3d 378. We do so because summary judgment may be granted only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Cannady v. St. Vincent Infirmary Med. Ctr.*, 2012 Ark. 369, 423 S.W.3d 548. However, when parties file cross-motions for summary judgment, as was done in this case, they essentially agree that there are no material facts remaining, and summary judgment is an appropriate means of resolving the case. When the parties agree on the facts, we simply determine whether the appellee was entitled to judgment as a matter of law. *Hobbs v. Jones*, 2012 Ark. 293, 412 S.W.3d 844.

In deciding issues of law, our standard of review is de novo. *State v. Cassell*, 2013 Ark. 221, 427 S.W.3d 663. "De novo review means that the entire case is open for review." *Certain Underwriters at Lloyd's, London v. Bass*, 2015 Ark. 178, at 9, 461 S.W.3d 317, 323 (citations omitted).

The City argues that the circuit court erred in not finding that the Agreement continued to bind the parties beyond the satisfaction of the payments of the past-due jail fees owed in 35CV-04-844. It argues that the Agreement is a valid contract, which the parties operated under for fourteen years until the County attempted to impose a fee for housing city arrestees and convictees by adopting Ordinance No. 2020-154, thereby breaching the 2006 Agreement between the parties.[2]

---

[2]The City also argues that the circuit court erred in (1) not finding that the County could be bound by the terms of the Agreement and (2) finding that the Agreement was uncertain as to time of termination and thus terminable at will. However, the circuit court did not find that the County could not be bound by the terms of the Agreement; instead, the court found that the Agreement did not bind either party beyond the deadlines stated therein. Also, it is immaterial whether the Agreement was "terminable at will" because its terms were completed in December 2008. *See infra.*

We hold that by its own terms, the Agreement did not bind either party beyond December 2008 and that Jefferson County Ordinance No. 2020-154 is valid and controls over the Agreement.[3] The City never agreed to any jail-fee agreement except in 1993 (the twenty-year contract) and 2006 (the Agreement), and the 2006 Agreement ended in December 2008. Arkansas Code Annotated section 12-41-506(a)(1) provides that "in the absence of an agreement on jail costs between a county and all municipalities having law enforcement agencies in the county, the Quorum Court in a county in this state may by ordinance establish a daily fee to be charged to municipalities for keeping prisoners of municipalities in the county jail." Here, the Jefferson County Quorum Court exercised this right and lawfully passed Ordinance No. 2020-154. We affirm the summary-judgment order in favor of the County.

Affirmed.

VIRDEN, BARRETT, HIXSON, and MURPHY, JJ., agree.

KLAPPENBACH, C.J., dissents.

**N. MARK KLAPPENBACH, Chief Judge, dissenting**. I respectfully dissent. The parties did not dispute the facts or the law, just the application of the law to those facts. The heart of the disagreement is whether the City owed the County daily jail housing fees from

---

[3]The dissent holds that the County is still bound by the Agreement it made with the City in 2006 and that the parties did not waive or modify any of the contract terms in writing. However, it is unclear what terms the parties would have been operating under after 2008 because the terms of the Agreement had been completed and no rate was negotiated moving forward. It is also unclear what terms of the Agreement the County could have attempted to modify in writing because again, all terms had been fulfilled.

and after January 1, 2021. I believe that there was an existing contractual agreement between the parties to which the County was bound. Thus, I would reverse.

In 1993, the City and the County contracted for jail-bed use, but years later, the City ceased making agreed payments, leading to a lawsuit. The parties settled in 2006, providing a payment schedule. The City's final payment in December 2008 terminated the 1993 agreement.[1] The City's payments totaled more than $960,000. In the 2006 settlement agreement, paragraph 1(k) recites that the parties would enter into a new agreement after the opening of the new county jail "in the event that the City is using more beds than allotted to the City" in the agreement. Paragraph 2 of the settlement agreement recites that no modification or waiver of any terms would be effective unless made in writing and signed by both parties. The parties did not modify or waive any provision. The expected renegotiation did not happen, but that did not mean that the contract was terminated. There is a difference between termination and failure to adhere to contract terms.

Fourteen years later, the County passed an ordinance to charge cities $30 a day for jail costs, which went into effect January 1, 2021. The County sent bills to the City for jail housing from and after that date.

The City believed it no longer owed the County for those fees because the 2006 contract was still in effect and permitted the City to use the allotted bed space by virtue of its required payments. The City contended that the fact that no further negotiations

---

[1]In June 2007, the supreme court dismissed the City's appeal asking it to interpret the meaning of "prisoners of municipalities." *City of Pine Bluff v. Jones*, 370 Ark. 173, 258 S.W.3d 361 (2007). At that time, the parties were operating under the facts as they existed in 2006, before the City had completed its payments.

happened after 2008 did not matter; no negotiations were necessary because the City never exceeded its allotted beds, which was the stated reason that negotiations would be needed. The County believed the 2006 settlement terminated in 2008 and that its ordinance controlled.

The first rule of interpretation of a contract is to give to the language employed the meaning that the parties intended. *First Nat'l Bank of Crossett v. Griffin*, 310 Ark. 164, 832 S.W.2d 816 (1992). We must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain and ordinary meaning. *Id*. The intention of the parties is to be gathered from the whole context of the agreement. *Id*.

Clearly, a county may charge cities for jail housing "in the absence of an agreement on jail costs" between them. Ark. Code Ann. § 12-41-506 (Repl. 2016). The 2006 settlement agreement set a definite and certain amount to be paid for a certain allotment of beds, which the City paid. Future fees would need renegotiation "in the event that the City is using more beds than allotted to the City in the paragraphs noted above." The City did not exceed its allotted beds. Notably, the County took no action against the City from 2008 until 2021. I would hold that the County was bound by the agreement it made with the City. The parties did not waive or modify any of the contract terms, and it was not terminated by its own terms. The agreement applied, and the jail-fee ordinance did not.

I would reverse.

*Althea Hadden-Scott*, City Attorney, City of Pine Bluff, for appellant.

*C. Burt Newell*, for appellees.